## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MARK A. NEWTON, *et al.*, | ) | CASE NO. 1:17-CV-02545 |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **DISTRICT JUDGE JAMES S. GWIN** |
| **vs.** | ) | |
| | ) | |
| JACQUELYN ELLIS, *et al.*, | ) | <u>ELLIS DEFENDANTS' MOTION TO</u> |
| | ) | <u>DISMISS</u> |
| **Defendants.** | ) | |
| | ) | |

## MOTION

Defendants, Jacquelyn, Rodney, and Andrea Ellis, request that this court dismiss all claims that have been raised against them in accordance with Fed. R. Civ. P. 12(b)(6). As developed in the following Memorandum, the Complaint fails to allege potentially viable claims for relief for defamation, conspiracy, malicious prosecution, abuse of process, false light, and infliction of emotional distress.

Respectfully submitted,

<u>*s/ John P. O'Neil*</u>
John P. O'Neil, Esq. (#0067893)
**ELK & ELK CO., LTD.**
6105 Parkland Boulevard
Mayfield Heights, Ohio 44124
(440) 442-6677
joneil@elkandelk.com

<u>*s/ Andrew M. Wargo*</u>
Andrew M. Wargo, Esq. (#0058464)
**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**
127 Public Square, Suite 3510
Cleveland, Ohio 44114
(216) 912-3800
amwargo@mdwcg.com

<u>*s/ Paul W. Flowers*</u>
Paul W. Flowers, Esq. (#0046625)
**PAUL W. FLOWERS CO., L.P.A.**
Terminal Tower, Suite 1910
50 Public Square
Cleveland, Ohio 44113
(216) 344-9393
pwf@pwfco.com

*Attorneys for Defendants,*
*Jacquelyn Ellis, et al.*

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

## <u>MEMORANDUM</u>

## <u>BACKGROUND</u>

Plaintiffs, Mark A. Newton ("Newton") and Patricia Rideout, commenced this civil action in the Cuyahoga County Court of Common Pleas on November 3, 2017 requesting damages and other relief against Defendants, Jacquelyn Ellis, Rodney Ellis, and Andrea Ellis (collectively the "Ellis Defendants"), City of Shaker Heights, Chief Jeffrey DeMuth, Commander John Cole, Sgt. Marvin Lamielle, and Det. Jessica Page. *Case No. CV 17 888503.*  The Complaint alleges *inter alia* that an eighth grade student, her parents, a police detective, several police officials, and a municipality all "maliciously combined together to have Plaintiff [Mark] Newton charged and prosecuted on false allegations that he sexually abused" the student at the private girls school where he worked as a part-time teacher and softball coach. *R.#:1-1, Complaint, p. 54, paragraph 250; PageID#:59.*  The theories of recovery asserted are multiple constitutional rights violations under 42 U.S.C. §1983 (Counts One through Five), Defamation (Count Six), Civil Conspiracy (Count Seven), Malicious Prosecution (Count Eight), Abuse of Process (Count Nine), False Light (Count Ten), Intentional Infliction of Emotional Distress (Count Eleven), and Loss of Consortium (Count Twelve). *Id., pp. 44-61, paragraphs 203-295; PageID#:49-67.*

Solely for purposes of this Motion, the allegations set forth in the Complaint will be accepted as correct.  However, only those "facts" that pertain to the seven state law Counts seeking damages from the Ellis Defendants need to be addressed.

Plaintiff Newton is a licensed attorney who served as an Assisting Prosecuting Attorney in the City of Toledo until 1990. *R.#:1-1, Complaint, p. 6, paragraphs 17-18; PageID#:11.*  In 1989, he "began his teaching career" with a short stint at the Wiley

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax: (216) 781-5876

Middle School in Cleveland Heights.  *Id., p. 7, paragraph 19; PageID#:12*.  He then worked for the next thirteen years at all girl private schools, first Hathaway Brown and then Laurel in Shaker Heights.  *Id., paragraphs 20-22; PageID#:12*.  He coached the softball teams at both schools.  *Id.*

During the 2012-13 school year, Defendant Jacquelyn Ellis ("J. Ellis") was an eighth grade student at Laurel and a member of the softball team.  Roughly eighteen months later on August 24, 2014, she confided in a friend that "Plaintiff Newton sexually assaulted her on two (2) separate occasions in an equipment room during indoor softball practices at Laurel."  *R.#:1-1, Complaint, p. 8, paragraph 31; PageID#:13*.  These "allegations of sexual assault against Plaintiff Newton were false, malicious, made in bad faith, and *per se* defamatory."  *Id., paragraph 32*.  Several weeks later, J. Ellis disclosed the incidents to her father and mother, Defendants Rodney Ellis ("R. Ellis") and Andrea Ellis ("A. Ellis").  *Id., paragraph 33*.  Both parents soon appreciated "either immediately or soon thereafter" that their daughter's allegations were false.  *Id., p. 9, paragraph 36; PageID#:14*.  The Ellis Defendants then "conspired" together "either initially, or shortly thereafter," to pursue the false allegations "for the purpose of seeking money damages against The Laurel School and Plaintiff Newton in the future."  *Id., paragraph 36*.

The scheme was designed so that J. Ellis would first disclose the alleged sexual assaults to her therapist on October 15, 2014.  *R.#:1-1, Complaint, p. 9, paragraph 37; PageID#:14*.  As the Ellis Defendants had envisioned, the therapist then reported the allegations of abuse to the Ohio Department of Job and Family Services.  *Id., p. 10, paragraph 42; PageID#:15*.  At approximately the same time, A. Ellis alerted Laurel's head administrator of the situation, which was relayed to other school officials, teachers,

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

3

and employees.  *Id., paragraphs 41 & 43*.  The high school student then continued to "perpetrate her false allegations of sexual assault against Plaintiff Newton during various discussions with therapists and other medical professionals from October 2014 through the present."  *Id., p. 10, paragraph 44*.

Several months later, J. Ellis met with a Summit County Children Services' Case Worker.  *R.#:1-1, Complaint, p. 11, paragraph 48; PageID#16*.  Nearly two months after that, the young girl submitted to an interview at the Shaker Heights Police Department by Defendant Det. Jessica Page ("Det. Page").  *Id., paragraph 51*.  At the detective's request, J. Ellis drew a rough diagram of the gymnasium and equipment room where she maintained the sexual assaults had occurred.  *Id., p. 14, paragraph 59; PageID#19*.  The entire session was recorded on video and lengthy portions of the transcript have been included in the Complaint.  *Id., pp. 12-15, paragraphs 56-62*.

The investigation continued, and J. Ellis was interviewed again by Det. Page and Det. Walter Siegel ("Det. Siegel") on April 21, 2016.  *R.#:1-1, Complaint, p. 17, paragraphs 74-75; PageID#:22*.  As can be observed on the video recording of that second session, Det. Page handed the girl a white notepad and instructed her to provide another drawing of the equipment room contents.  *Id., p. 20, paragraph 84; PageID#:25*.  According to the Complaint, the video clearly depicts how J. Ellis proceeded to again draw the window, door, shelves, and buckets of softballs.  *Id., pp. 20-21, paragraph 86*.  Plaintiffs contend that this "second diagram was materially inconsistent" with the first one the girl had provided over a year earlier, which had attempted to depict the scene of the assault that had allegedly occurred eighteen months before that.  *Id., p. 22, paragraph 90; PageID#:27*.

Plaintiffs further allege that Det. Page appeared before the Cuyahoga County

4

Grand Jury on September 26, 2016 "knowing that she lacked probable cause to believe that Plaintiff Newton had sexually abused Defendant J. Ellis." *R.#:1-1, Complaint, p. 23, paragraphs 95-97; PageID#:28.* The detective deliberately withheld the second diagram during the proceeding. *Id., pp. 23-25, paragraphs 97-103; PageID#:28-30.* As a result, an indictment was issued and reported by local news media. *Id., pp. 25-27, paragraphs 106-111; PageID#:30-32.* Laurel's administrator also issued a notice to the school families and alumnae, informing them of the charges. *Id., p. 26, paragraph 108.*

The Ellis Defendants had retained their own personal counsel. *R.#:1-1, Complaint, p. 10, paragraph 40; PageID#:15.* On November 4, 2016, he issued a settlement demand letter to Laurel that "constituted a false and defamatory statement about Plaintiff Newton (that he sexually assaulted Defendant J. Ellis)[.]" *Id., p. 28, paragraphs 116-118; PageID#:33.*

On March 29, 2017, J. Ellis met with Det. Page and Prosecutor Maggie Kane ("Kane"). *R.#:1-1, Complaint, p. 29, paragraph 120; PageID#:34.* The young student "re-stated her false allegations of sexual assault against Plaintiff Newton." *Id., paragraph 121; PageID#:35.*

During the preparations for trial, Plaintiff Newton's attorneys determined that the second diagram had been prepared, which had never been provided to them. *R.#:1-1, Complaint, p. 30, paragraph 127; PageID#:35.* They have alleged that Det. Page refused to acknowledge the existence of this exhibit, even to Prosecutor Kane. *Id., pp. 32-35, paragraphs 133-135; PageID#:37.* It was actually J. Ellis who openly confirmed when asked during cross-examination that she had indeed provided the second diagram during the second interview. *Id., p. 35, paragraph 148; PageID#:40.*

Following further proceedings, Common Pleas Judge Nancy Margaret Russo

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax: (216) 781-5876

issued a decision that was highly critical of Det. Page for withholding evidence and dismissed the criminal charges as a sanction. *Apx. 0001-12, attached.*[1]  Notably, no finding was entered that the Ellis Defendants were somehow to blame for the due process violation.  *Id.*  Nor did the court suggest that the girl's allegations of sexual abuse were either unfounded or had been brought in bad faith.  *Id.*

## STANDARDS

A dismissal can be sought through Fed. R. Civ. P. 12(b)(6) when a claim fails to contain sufficient factual allegations that, when accepted as true, justify the relief sought.  *Jackson v. Professional Radiology Inc.,* 864 F. 3d 463, 467 (6th Cir. 2017); *16630 Southfield Ltd. Ptnr. v. Flagstar Bank, F.S.B.*, 727 F. 3d 502, 504 (6th Cir. 2013).  "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. National Collegiate Athletic Ass'n.*, 528 F. 3d 426, 430 (6th Cir. 2008) (citation omitted).

While Fed. R. Civ. P. 8(a)(2) only requires "a short and plain statement" of a potentially valid claim for relief, the U.S. Supreme Court has confirmed that proper

---

[1] Judge Russo's opinion has been specifically referenced in Plaintiffs' pleading and is central to several claims for damages.  *R.#:1-1, Complaint, p. 43, paragraph 202; PageID#:48.*  The decision therefore may be considered in determining whether a dismissal is warranted.  *In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 466–467 (6th Cir.2014).  Furthermore, this court is entitled to take judicial notice of public records that are available through reliable governmental websites.  *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F. 3d 495, 501 (6th Cir. 2003); *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield,* 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007); *State ex rel. Everhart v. McIntosh*, 115 Ohio St. 3d 195, 196-197, 2007-Ohio-4798, 874 N.E. 2d 516, 518, ¶8; *Caghan v. Caghan*, 2015-Ohio-1787, ¶60-62 (5th Dist. Stark).

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

pleading "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Sufficient facts must be alleged "to state a claim to relief that is plausible on its face." *Id.,* 550 U.S. at 570. Two years later, the Court explained that *Bell Atlantic Corp.* established two principles, the first of which is that:

> [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The majority continued:

> Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will * * * be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' (Citations omitted).

*Id.,* at 679, quoting Fed.R.Civ.P. 8(a)(2).

As the Sixth Circuit has recognized, this pair of decisions "confirms that [Fed.R.Civ.P. 8(a)(2)] imposes legal *and* factual demands on the authors of complaints." (Emphasis sic.) *16630 Southfield Ltd. Partnership,* 727 F.3d at 503. Neither unadorned legal conclusions nor unwarranted factual inferences need be accepted. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir.2014); *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir.2012); *HDC, LLC v. City of Ann Arbor,* 675 F.3d 608, 611 (6th Cir.2012).

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

7

## ANALYSIS

Only six of the Counts of the Complaint seek damages from the Ellis Defendants, none of which allege potentially viable claims for relief.[2]  Each theory is predicated squarely upon the Ellis Defendants' allegedly false charges of sexual abuse, which cannot form the basis for civil liability in Ohio as a matter of law.

## I.      STATUTE OF LIMITATIONS VIOLATIONS

### A.      The One-Year Time Bar for Defamation and False Light

When claims are time-barred on the face of the Complaint, an immediate dismissal is warranted.  *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 493, 2006-Ohio-2625, 849 N.E.2d 268, 272, ¶11; *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 159, 2011-Ohio-4432, 956 N.E.2d 814, 818, ¶13; *Messer v. Schneider Natl. Carriers*, 2016-Ohio-7050, ¶11 (8th Dist. Cuyahoga); *Partis v. Miller Equip. Co.*, 324 F. Supp. 898, 902-903 (N.D. Ohio 1970), *aff'd.*, 439 F. 2d 262 (6th Cir. 1971).  The statute of limitations for a claim of defamation, including libel and slander, is one year. *R.C. 2305.11(A)*.  The related theory of false light invasion of privacy is subject to the same limitations period.  *Murray v. Moyers*, U.S. Dist. Ct., S.D. Ohio, Case No. 2:14-CV-02334, 2015 WL 5626509, *3-4 (Sept. 24, 2015).  No discovery rule is available.  *Kienow v. Cincinnati Children's Hosp. Med. Ctr.*, 2015-Ohio-4396, ¶8 (1st Dist. Hamilton); *Reed v. Jagnow*, 2013-Ohio-2546, ¶25 (7th Dist. Mahoning).   "A cause of action for defamation accrues when the words are published or spoken, rather than when the plaintiff becomes aware of them."  *Altier v. Valentic*, 2004-Ohio-5641, ¶38 (11th Dist.

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

---

[2] While Count Twelve demands damages for loss of consortium, that claim is purely derivative.  *R.#:1-1, Complaint, p. 61.*  A dismissal of this final Count is therefore warranted unless one of the other claims that has been alleged against the Ellis Defendants survives this Motion.  *Miller v. City of Xenia*, 2002-Ohio-1303 (2nd Dist. Greene); *Kerns v. Hobart Bros. Co.*, 2008-Ohio-2242, ¶127 (2nd Dist. Miami).

Geauga) (citations omitted); *Reed*, 2013-Ohio-2546, ¶25.

Here, Plaintiffs' claims of defamation and false light invasion of privacy accrued on August 24, 2014, when J. Ellis disclosed the allegations of sexual abuse to her middle school friend.  *R.#:1-1, Complaint, p. 8, paragraph 31; PageID#:13*.  And, although the discovery rule is inapplicable, Plaintiff Newton was certainly aware of the "false allegations" by October 17, 2014, when they were reported to his employer at Laurel. *Id., p. 10, paragraphs 42-43; PageID#:15*.  He nevertheless waited for over three years before commencing the instant action on November 3, 2017.  The Complaint thus conclusively establishes on its face that Counts VI and X are time-barred.

Plaintiff Newton may attempt to sidestep the one-year statute of limitations by arguing that the repetition of the false claims, either through the attorney's settlement demand letter or the student's trial testimony, started the clock running all over again. But no such exception has been furnished in the text of R.C. 2305.11(A).  If that was the law, the statute of limitations would mean little.  Once a plaintiff has allowed more than a year to elapse from the initial publication, no one should have to fear that merely repeating the same statements will reopen the gates for a lawsuit.

The opinion rendered in *Clark v. Viacom Intern. Inc.*, 617 Fed.Appx. 495 (6th Cir.2015), is instructive.  There the court affirmed dismissal of a defamation claim based on the one-year statute of limitations period.  The alleged defamatory statement was initially published online and later remained available on publicly available websites. The court concluded that the later availability of the alleged defamatory statements did not re-set the limitations period, which was triggered by the initial disclosure.  Without such a rule, there could be no finality as contemplated by statute of limitations jurisprudence.  *See also T.S. v. The Plain Dealer,* 194 Ohio App.3d 30, 2011-Ohio-2935,

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

9

954 N.E.2d 213 (8th Dist. Cuyahoga) (initial date when alleged defamatory article was published was the date from which the statute of limitations period ran, not online publication that occurred twenty years after initial publication); *Fleming v. Ohio Atty. Gen.*, 2002-Ohio-7352 (10th Dist. Franklin) (defamation claim properly dismissed where court rejected continuing defamation argument by plaintiff to keep re-setting limitations period with each subsequent publication); *Smith v. National W. Life*, 2017-Ohio-4184, ¶9, fn.1 (8th Dist. Cuyahoga) ("Ohio has not adopted a continuing publication rule for defamation; instead, it is the first publication that controls for purposes of the statute of limitations.")

### B.    Impact upon the Alternative Tort Claims

Each of Plaintiffs' other four tort claims are based squarely upon the Ellis Defendants' allegedly "false" claims of sexual abuse.  *R.#:1-1, Complaint, pp. 54-61; PageID#:59-66*.  The Complaint is devoid of any allegations that they engaged in some other tortious act or omission apart from the purported defamatory statements.  By all appearances, Plaintiffs expect that they can avoid the one-year time limit imposed by R.C. 2305.11(A) simply by reclassifying their defamation and false light claims as some other tort theory.

This strategy is hardly new, and Ohio state and federal courts have thus recognized that "the applicable statute of limitation is determined not from the form of pleading or procedure, but from the gist of the complaint."  *Hibbett v. City of Cincinnati*, 4 Ohio App.3d 128, 131, 446 N.E.2d 832, 836 (1st Dist.1982) (citations omitted); *see also Love v. City of Port Clinton*, 37 Ohio St.3d 98, 99–100, 524 N.E.2d 166, 168 (1988); *Gullatte v. Rion*, 145 Ohio App.3d 620, 626, 763 N.E.2d 1215, 1219 (2nd Dist.2000); *Lasmer Industs., Inc., v. AM General, LLC*, 741 F. Supp. 2d 829, 837-838

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

(S.D. Ohio 2010).  The "label that a party may assign to a set of facts" is immaterial. *McDougal v. Dr. Frank Vecchio Etc., Found.,* 2014-Ohio-4472, ¶33 (8th Dist. Cuyahoga); *see also Brust v. Kravitz,* 2016-Ohio-7871, ¶17 (10th Dist. Franklin).

Indistinguishable circumstances were examined in *West v. Kysela*, 8th Dist. No. 75594, 2000 W.L. 23083 (Jan. 13, 2000).  A dentist had been sued in that case for allegedly defaming his patient's mother in two letters regarding her orthodontic care. *Id.,* at *1.  She did not commence her civil action, however, until over four years later. *Id.*  Although the original complaint was based upon defamation, the plaintiff was permitted to amend the pleading to include "a claim of conspiracy to defame[.]" *Id.,* at *2.  After recognizing the one-year time bar set forth in R.C. 2305.11(A), the panel observed that the plaintiff could not "circumvent the statute of limitations period by labeling her claim as a conspiracy to commit defamation." *Id.,* at *5. *See also Montgomery v. Ohio State Univ.*, 2012-Ohio-5489, ¶15 (10th Dist. Franklin) (dismissing claims of negligence based upon same time-barred allegations of defamation).

Turning to the case *sub judice*, the far-fetched theories of civil conspiracy, malicious prosecution, abuse of process, and intentional infliction of emotional distress are all really reconfigured claims of defamation and false light. *R.#:1-1, Complaint, pp. 54-61; PageID#:59-66.*  Without exception, each one is founded squarely upon the same allegations of "false statements" "false claims" and "false allegations" that form the basis of the time-barred Count IV (Defamation) and Count X (False Light). *Id., paragraphs 250, 251, 252, 256, 259, 262, 268, 273, 274, 275, & 283.*  Nothing has been alleged that would support these tort claims, absent the supposedly libelous and slanderous misstatements. *Id.*  This court should therefore proceed to dismiss all the state law tort claims that have been asserted against the Ellis Defendants as time-barred.

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

11

## II.    THE ABSOLUTE PRIVILEGE

### A.  The Protection Afforded to Judicial Proceedings

The statute of limitations aside, the dismissal of Plaintiffs' ill-conceived tort claims is warranted for a second reason.  Each of them relies squarely upon the purportedly "false" claims of sexual abuse of a minor.  *R.#:1-1, Complaint, pp. 52-61; PageID#:59-66.*  In order to justify the assertion of *"per se"* damages, Plaintiffs have acknowledged that these offenses are indeed "crimes[.]"  *Id., p. 53, paragraph 247.*  But contrary to what they appear to believe, Ohio law does not permit everyone who reports criminal activity to be sued once the proceedings are terminated without a conviction.

Absolute immunity from civil liability is recognized in Ohio for those who participate, conduct, and oversee judicial proceedings.  *Grimm v. Wickman*, 2011-Ohio-3991, ¶8 (8th Dist. Cuyahoga); *Beckett v. Ford*, N.D.Ohio No. 3:06CV1319, 2007 WL 2891122, *7 (Sept. 28, 2007).  The Supreme Court of Ohio has explained that:

> It is a well-established rule that <u>judges, counsel, parties, and witnesses are absolutely immune from civil suits for defamatory remarks made during and relevant to judicial proceedings</u>.  See *Erie County Farmers' Ins. Co. v. Crecelius* (1930), 122 Ohio St. 210, 171 N.E. 97; *McChesney v. Firedoor Corp.* (1976), 50 Ohio App.2d 49, 51, 361 N.E.2d 552 [4 O.O.3d 28]. This immunity is based on the policy of protecting the integrity of the judicial process. The function of a judicial proceeding is to ascertain the truth. To achieve this noble goal, participants in judicial proceedings should be afforded every opportunity to make a full disclosure of all pertinent information within their knowledge. For a witness, this means he must be permitted to testify without fear of consequences. Freedom of speech in a judicial proceeding is essential to the ends of justice. 1 Harper & James, Law of Torts (1956) 423-426, Section 5.22. [emphasis added].

*Willitzer v. McCloud*, 6 Ohio St.3d 447, 448–449, 453 N.E.2d 693, 695 (1983).  These vital protections are not just limited to criminal prosecutions, but reach those who

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

participate in civil actions as well.  *West*, 2000 WL 23083, at *6 (holding that claim of defamation could not be based upon a letter solicited for use as evidence in a divorce proceeding).

This absolute privilege "extends to every step in the proceeding, from beginning to end[,]" including the initial complaint of wrongdoing.  *M.J. Dicorpo, Inc. v. Sweeney*, 69 Ohio St.2d 497, 506, 1994-Ohio-316, 634 N.E.2d 203, 210; *see also West*, 2000 WL 23083, at *6; *Ventura v. Cincinnati Enquirer*, 246 F.Supp.2d 876, 881–882 (S.D.Ohio 2003); *Garrett v. Fisher Titus Hosp.*, 318 F.Supp.2d 562, 577 (N.D.Ohio 2004).  As one would expect from an "absolute" privilege, not even perjured testimony is actionable. *Scott v. Schneider*, 8th Dist. Cuyahoga No. 74120, 1999 WL 401567, *2 (June 17, 1999). All that is necessary is that the statements "bear some reasonable relation" to the judicial proceeding.  *Surace v. Wuliger*, 25 Ohio St.3d 229, 233, 495 N.E.2d 939, 942–943 (1986); *Hecht v. Levin*, 66 Ohio St.3d 458, 460, 1993-Ohio-110, 613 N.E.2d 585, 588.

In this instance, Plaintiffs have admitted that J. Ellis' initial allegations of sexual abuse led inexorably to the Shaker Heights Police Department's investigation and ultimately the grand jury proceedings.  *R.#:1-1, Complaint, pp. 6-23; PageID#:11-28*. Everything she and her parents communicated to the investigators, social workers, prosecutor, and common pleas judge falls squarely within the broad scope of the absolute privilege afforded to judicial proceedings.  It makes no difference how many times Plaintiffs assert that her charges were "false," they are immune from suit all the same.  *Scott*, 1999 WL 401567, at *2; *Wrenn v. Ohio Dept. of Mental Health & Mental Retardation*, 16 Ohio App.3d 160, 474 N.E.2d 1201, 1204 (10th Dist.1984).

Plaintiffs have made much ado over the settlement demand letter that the Ellis

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

Defendants' personal attorney sent to Laurel on November 4, 2016, restating the two year old charges of sexual abuse.  *R.#:1-1, Complaint, pp. 28-29, paragraphs 116-118; PageID#:33*.  As can be readily observed, the correspondence was sent solely to the private school's counsel in an effort to resolve the civil claims.  *Apx. 00013-15*.[3]  Given that such routine correspondences always accuse someone with some sort of wrongdoing, Plaintiffs' position is apparently that every lawyer who issues one in the hopes of resolving a claim pre-suit necessarily exposes the clients to damages for "libel *pre se*[.]"  *R.#:1-1, Complaint, p. 28, paragraph 118; PageID#:33*.

Fortunately for Ohio's legal bar, the absolute privilege still applies as was recognized in *Lang v. Trimble-Weber*, 8th Dist. Cuyahoga No. 75692, 2000 WL 337619 (Mar. 30, 2000).  The plaintiff in that instance maintained that he lost "his good name, reputation, and character" when a draft of a complaint containing "untrue defamatory statements regarding him" was sent to his former domestic relations client.  *Id.,* at *3.  The plaintiff admitted that the defendant had "not personally published the libelous complaint," but asserted instead that he "was part of a civil conspiracy to libel him and thus is responsible for the acts of anyone in the group."  *Id.,* at *3.  In analyzing the trial court's entry of summary judgment in favor of the defendant, the Eighth District remarked that: "The question of whether absolute privilege applies in a given case is necessarily one of law for the court to determine."  *Id.,* *4 (citation omitted).  The majority then reasoned that:

> This court notes that the absolute privilege or immunity for statements made in a judicial proceeding extends to every step in the proceeding, from beginning to end. *M.J. DiCorpo,*

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

---

[3] As previously noted, this exhibit can be considered by this Court since Plaintiffs have squarely predicated their causes of action upon the attorney's correspondence.  *In re Omnicare, Inc. Securities Litigation*, 769 F.3d at 466–467.

> *Inc. v. Sweeney* (1994), 69 Ohio St.3d 497, 506. Pursuant to
> the Restatement of the Law 2d, Torts (1977) 25, Section 586,
> this court has found that <u>the privilege attaches prior to the
> filing of a lawsuit</u>. Restatement of the Law 2d, Torts (1977)
> 25, Section 586 states: "An attorney at law is absolutely
> privileged to publish defamatory matter concerning another
> in communications preliminary to a proposed judicial
> proceeding, or in the institution of, or during the course and
> as a part of, a judicial proceeding in which he participates as
> counsel, if it has some relation to the proceeding. (Emphasis
> added.)" See *Simmons v. Climaco* (1986), 30 Ohio App.3d
> 225; *Urban v. Fulton* (Dec. 19, 1985), Cuyahoga App. No.
> 49921, unreported. [emphasis added].

*Id., *4.* Even though no lawsuit had been filed at that point in time, the publication of

the draft complaint still could not support a claim of civil liability. *Id.,* at *4-5*; see also,*

*Theiss v. Scherer*, 396 F.2d 646, 648–649 (6th Cir.1968) (letter written by attorney in

probate proceeding was absolutely privilege). In accordance with this established

precedent, Plaintiffs Newton's caterwauling over the settlement demand letter that was

issued to his employer is completely pointless.

### B.  The Preclusion of the Alternative Tort Claims

It must be stressed that the absolute privilege not only bars the defamation claim,

but also Plaintiffs' other tort theories for recovery. *Wells Fargo Bank, N.A. v. Johnson*,

2016-Ohio-1114, ¶25-26 (6th Dist. Lucas) (intentional infliction of emotional distress);

*Willis & Linnen Co., L.P.A. v. Linnen*, 163 Ohio App.3d 400, 403-404, 2005-Ohio-4934,

837 N.E.2d 1263, 1265-66, ¶7-10 (9th Dist. Summit) (abuse of process and malicious

prosecution); *Lee v. City of Upper Arlington*, 2003-Ohio-7157 (10th Dist. Franklin)

(negligence, misrepresentation, abuse of process, malicious prosecution, false arrest,

false imprisonment, and other torts); *Stiles v. Chrysler Motors Corp.*, 89 Ohio App.3d

256, 266, 624 N.E.2d 238, 244 (6th Dist.1993) (infliction of emotional distress). "Ohio

courts have recognized on numerous occasions that when a tort claim is based on

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

privileged speech, the tort claim must fail." *Martinez v. WTVG, Inc.*, 2008-Ohio-1789, ¶40 (6th Dist. Lucas) (citations omitted).  An alternative justification has thus been established for dismissing all claims that have been brought against the Ellis Defendants through Fed. R. Civ. P. 12(b)(6).

### III.   MALICIOUS PROSECUTION

Turning to Count VIII (Malicious Prosecution), this particular theory cannot survive as a matter of law.  Because of the restraint that is imposed upon the lawful resort to the courts, claims of malicious prosecution are not favored in Ohio.  *Sygula v. Regency Hosp. of Cleveland E.,* 2016-Ohio-2843, ¶29 (8th Dist. Cuyahoga).  "Public policy supports this position in order that criminal investigations are not discouraged and that those who cooperate with law enforcement are protected."  *Froehlich v. Ohio Dept. of Mental Health,* 114 Ohio St.3d 286, 288, 2007-Ohio-4161, 871 N.E.2d 1159, 1162, ¶9.  The essential elements of the tort are (1) the malicious institution of proceedings, (2) a lack of probable cause, and (3) termination of those proceedings in the plaintiff's favor.  *Crawford v. Euclid Natl. Bank*, 19 Ohio St.3d 135, 139, 483 N.E.2d 1168, 1171 (1985).

This court need not dwell long on whether Plaintiffs have sufficiently alleged the first two elements, as they certainly cannot establish the third.  "A proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent."  *Ash v. Ash*, 72 Ohio St.3d 520, 522, 651 N.E.2d 945, 947–948 (1995) (citation omitted); *see also New Lebanon v. Krahn*, 2015-Ohio-4791, 50 N.E.3d 291, 316, ¶80 (2nd Dist. Montgomery).  Plaintiff Newton has not been declared "innocent" of anything, and he was able to avoid a final adjudication by convincing Judge Russo to dismiss the prosecution as a discovery sanction.  *R.#:1-1, Complaint, p.*

Paul W. Flowers Co.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

16

*43, paragraph 202; PageID#:48*.  The claim of malicious prosecution is therefore frivolous.

## IV.    ABUSE OF PROCESS

Finally, Plaintiffs have failed to allege a potentially viable claim of abuse of process, which requires proof:

> (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process.

*Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.,* 68 Ohio St.3d 294, 298, 1994-Ohio-503, 626 N.E.2d 115, 118.

An examination of the second element is enough to justify a dismissal of Count IX.  Other than a single conclusory assertion that does not appear until the 270th paragraph of the Complaint, Plaintiffs have failed to allege that the legal proceedings were "perverted" by the Ellis Defendants.  *Yaklevich*, 68 Ohio St.3d at 298.  To the contrary, the "Factual Background" that has been devised describes how the criminal proceedings properly commenced with an indictment and continued through to the trial, which was ultimately terminated as a result of a discovery violation.  *R.#:1-1, Complaint, pp. 6-43; PageID:11-48*.  No "perversion" at all has been identified in this detailed account.  *Id.*  As has been conceded *sub silentio*, the Ellis Defendants had no control whatsoever over these legal proceedings.  They thus could not have "perverted" anything, even if all the <u>factual</u> allegations of the Complaint are accepted as true.

In the single paragraph of the Complaint that finally addresses this critical element for establishing abuse of process, Plaintiffs seem to be insinuating that the Ellis Defendants' "attempted collection of $2,000,000.00 from The Laurel School in a pre-

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

17

suit settlement demand" somehow "perverted the criminal proceedings[.]"  *R.#:1-1, Complaint, p. 57, paragraph 270; PageID#:62.*  If this court is not obligated to accept conclusory allegations, those that are absurd can certainly be ignored.  *16630 Southfield Ltd. Ptnr.*, 727 F. 3d at 504.  No explanation has been furnished in the sixty-three page pleading for how the settlement demand had any impact at all upon the prosecution, let alone to the extent necessary to support an award of tort damages.  According to the <u>factual</u> allegations, J. Ellis herself <u>prevented</u> a perversion of the proceedings when she confirmed that she had indeed prepared the second diagram that was never disclosed to the defense.  *R.#:1-1, Complaint, p. 37, paragraph 165; PageID#:42.*  These inane allegations of abuse of process leave no doubt, if there ever was any, that Plaintiffs are simply grasping at straws in their effort to retaliate against the middle school student who had the temerity to report the claims of sexual abuse.

## CONCLUSION

Because Plaintiffs have failed to allege a potentially viable cause of action against the Ellis Defendants, this court should dismiss all claims that have been brought against them in accordance with Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

*s/ John P. O'Neil*
John P. O'Neil, Esq. (#0067893)
**ELK & ELK CO., LTD.**

*s/ Paul W. Flowers*
Paul W. Flowers, Esq. (#0046625)
**PAUL W. FLOWERS CO., L.P.A.**

*s/ Andrew M. Wargo*
Andrew M. Wargo, Esq. (#0058464)
**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

*Attorneys for Defendants, Jacquelyn Ellis, et al.*

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax: (216) 781-5876

## CERTIFICATE OF PAGE LIMITATIONS

In accordance with Loc. R. 7.1(f), I hereby certify that this action will likely be assigned to the standard track and that this filing complies with the court's page limitations.

*s/ Paul W. Flowers*

Paul W. Flowers, Esq. (#0046625)
**PAUL W. FLOWERS CO., L.P.A.**

*Attorney for Defendants,*
*Jacquelyn Ellis, et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2017 the foregoing **Motion** was filed electronically.  Notice of this filing will be sent to all parties by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

*s/ Paul W. Flowers*

Paul W. Flowers, Esq. (#0046625)
**PAUL W. FLOWERS CO., L.P.A.**

*Attorney for Defendants,*
*Jacquelyn Ellis, et al.*

PAUL W. FLOWERS CO.
50 Public Sq., Ste 1910
Cleveland, Ohio 44113
(216) 771-3239
Fax:  (216) 781-5876

19



FILED
COURT OF APPEALS
MAY 1 2 2017
Clerk of Courts
Cuyahoga County, Ohio

## IN THE COURT OF COMMON PLEAS

## CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | Case No. CR-16-608062 |
| Plaintiff, | : | |
| | : | |
| -vs.- | : | |
| | : | Judge Nancy Margaret Russo |
| | : | |
| MARK A NEWTON, | : | |
| Defendant | : | Opinion |

### OPINION

The law specifically provides Courts with the legal mechanism to dismiss cases with prejudice due to the flagrant constitutional violations by the State or their agents.

To permit this case to proceed would require me to ignore not only the legal mechanism, but more importantly, it would require me to ignore my oath to uphold, defend, and protect the Constitution of the United States. To allow this trial to proceed, after hearing sufficient evidence of misconduct, bad faith, and the obstruction/concealment/suppression of exculpatory evidence would be to wrongfully sanction such conduct in this case, and by precedent, sanction it in other cases.

1

Apx. 0001

## Facts

On September 12, 2016 Defendant Mark A. Newton ("Defendant") was indicted for two counts of rape in violation of ORC 2907.02(A)(2), two counts of gross sexual imposition in violation of 2907.05(A)(1), two counts of kidnapping in violation of 2905.01(A)(4), two counts of sexual battery in violation of 2907.03(A)(7). On May 8, 2017 Defendant filed a voluntary waiver of jury trial. The case proceeded to a Bench trial on May 8, 2017.

### Chronology of Investigation

- March 23, 2015 Complainant's first interview with Detective Page. It was during this interview that the Complainant and Detective Page created State's exhibit 32, a diagram of a room where Complainant alleged incidents occurred. The video of this interview is Defense Exhibit A1.

- April 27, 2015, first interview of Defendant Newton. Produced a diagram of the room marked State's Exhibit 84.

- August 14, 2015, Detective Page interview of Ms. Durdle who produced a diagram marked State's Exhibit 85.

- April 4, 2016 second interview with Defendant Newton. No diagram is produced.

- April 21, 2016, second interview with Complainant. It was during this interview, that the Complainant and Detective Page created the concealed/suppressed/destroyed evidence. This was another diagram of a room where the Complainant alleged incident occurred. Detective Page never produced the second diagram to the prosecuting attorney or defense.

2

During the cross-examination of the Complainant, the Complainant testified that she had produced two separate drawings of the room where the incidents were alleged to occur. Testimony confirms that Detective Page asked for Complainant's second interview and second diagram to inquire about contradictions between State Exhibits 32 and State Exhibits 84 and 85. It is uncontroverted that the second diagram was never made available by Detective Page to the prosecuting attorney or Defendant. Parties agree this diagram could not be created. The Defendant made a motion to dismiss based on the discovery of the suppressed/concealed/destroyed evidence. Upon Defendant's Motion to Dismiss, the Court permitted the parties to examine Detective Page on the issue of the missing document. Following that testimony, the Court reserved its ruling until after Detective Page testified at trial. The State then called their first witness Complainant, followed by Detective Siegel and Detective Page.

**Detective Page Statement Defendant's Exhibit A1 and A2 videos**

Defendant's Exhibits A1 and A2 are video interviews of Detective Page and Complainant. The exhibits contain the **following statements made by Detective Page to Complainant:**

- I want to make sure your wishes are taken into consideration...
- I am your advocate.
- ...because that's what I care about...
- I can't kill him...
- If someone touched one of my kids that's how...
- I might actually kill someone if they ... I can see that...
- I like to see people go to prison...
- Next best thing (to killing him) is trying to convict him
- I don't want to step you back emotionally spiritually...

3

- I'll do whatever my victim wants me to do.
- I will do anything for my victim.
- You are not a bad witness.
- You're very certain of things.
- You're putting the **truth** of what happened to you out there.
- I like seeing people go to prison, don't get me wrong…
- I'll be here and I'll fight as hard as I can . . .
- I'll try to find everything that I can to help you…
- I'm going to put a lot of time and effort into this
- Detective Page told the method of her investigation, going to get [Newton] in before I leave. Page described another sexual assault investigation and her methods.
- Detective Page comments that the stigma of being accused of sexual assault is as bad as a conviction. All someone has to do is Google Mark Newton and the accusations child rapist will appear.
- Detective Page advises Complainant that if Complainant was recording their interview the recording would be provided to the defense. Page repeatedly told Complainant it was okay to record but if there was a recording it would have to be turned over to the defense.

## Law

### A. Due Process

The right from which the State's duty to disclose to criminal defendants exculpatory material held by the prosecution flows, is premised upon the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution. Due process guarantees fundamental fairness in the trial of a criminal defendant. Although the guarantee of a fair trial does not mean an error-free or perfect trial, due process does require the State to allow the accused to present a complete defense.

4

The suppression of materially exculpatory evidence violates a defendant's due process rights, regardless of whether the State acted in good or bad faith. *State v. Geeslin*, 116 Ohio St.3d 252, 254, 2007-Ohio-5239, 878 N.E.2d 1, citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). To be materially exculpatory evidence must "possess an exculpatory value that was apparent before the evidence was destroyed" and be of a nature that the defendant is unable to obtain "comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

The Court in *Youngblood* draws a clear distinction between materially exculpatory evidence and potentially useful evidence. If the evidence in question is not materially exculpatory, the defendant must show that the State acted in bad faith in suppressing or withholding potentially useful evidence in order to demonstrate a due process violation. *Geeslin* at 254. *Arizona v. Youngblood*, 488 U.S. 51, 56, 109 St. Ct. 333, 102 L.Ed2d 281 (1988).

When evidence is only potentially useful, its destruction does not rise to the level of a due process violation unless the State or its agents acted in bad faith in destroying the evidence. *State v. Miller*, 161 Ohio App.3d 145, 2005-Ohio-2516, 829 N.E.2d 751 (2d Dist.).

Courts define "bad faith" as something more than bad judgment or negligence. Bad faith "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive, or ill will partaking of the nature of the fraud. It also embraces actual intent to mislead or deceive another." *State v. Durham*, 8th Dis. Cuyahoga No. 92681, 2010-Ohio-1416, ¶ 13.

**B. Discovery Violation**

Apx. 0005

The Supreme Court of Ohio recognized that a Trial Court has discretion in determining the sanction for a discovery violation. *State v. Parson*, 6 Ohio St.3d 442, 445, 6 Ohio B, 485, 453 N.E.2d 689 (1983). The Supreme Court continues to recognize the Trial Court has this discretion even after the changes to Crim. R. 16. Crim. R. 16(E)(3) describes a Trial Court's authority to issue orders addressing a party's failure to comply with discovery obligations, and that a Trial Court may issue any order "it deems just under the circumstances."

The discretion of the Trial Court "protects the integrity of the criminal justice process while protecting the rights of the defendants, witnesses, victims, and society at large." See Staff Notes to 2010 amendment Division (L) of Crim. R. 16 cited by *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971.

The Court in *Parson* established three factors that govern a Trial Court's exercise of discretion in imposing a sanction for discovery violation committed by the prosecution. The factors a Trial Court should consider are (1) whether the failure to disclose was a willful failure of Crim.R. 16 (2) whether foreknowledge of the undisclosed material would have benefited the accused in the preparation of the defense and (3) whether the accused was prejudiced. *Parsons at syllabus.*

In addition to the *Parson* factors, the Supreme Court directs the Trial Court to consider the effectiveness of less severe sanctions as an important factor of this balancing test. *Darmond* at ¶ 38. The Court in *Darmond* does not foreclose the possibility of a dismissal with prejudice as a sanction for a discovery violation committed by the State, but a Trial Court must first consider the *Parson* factors and determine whether a lesser sanction would be inconsistent with the purpose of criminal discovery rules. *Darmond* at ¶41.

6

This Court grants the Defendant's Motion to Dismiss all charges and makes the following findings:

1) That the 2nd diagram was materially exculpatory;

2) That the failure to disclose this diagram, whether by concealment, destruction or suppression was a willful failure to disclose and the failure to disclose was an act of bad faith by Detective Page;

3) That the undisclosed material would have absolutely benefited the accused in the preparation of his defense.

4) That further, had the material been disclosed to the prosecutor's office, it arguably could have prevented the complaint being submitted to the grand jury.

5) That the Defendant was, prejudiced by this failure of Detective Page to disclose the material.

This Court further finds that: it has considered whether a lesser sanction would be an effective remedy to this egregious and willful concealment, destruction and/or suppression of evidence, and concluded that in fact, no lesser sanction could ever be appropriate under the facts of this case.

## BAD FAITH/DETECTIVE PAGE

The plethora of evidence on this issue is frankly, overwhelming.

Police officers are charged with gathering information, nothing more and nothing less. Their duty, similar to the duty of all counsel and the Court, is to uphold the laws and constitution of this State and the United States.

No police officer can reasonably believe, nor do I believe, that any police officer has been trained to be an "advocate" for a Complainant.

7

Detective Page's attempt to explain away that statement, to-wit, "I am your advocate," was illogical and equally disturbing.

She testified that she "meant" she was there to refer the Complainant to social services and support her.  Even if we accepted Detective Page's characterization of her statement, she has still admitted her bias and lack of neutrality.  Her additional statements further buttress the evidence of bad faith.

Let's review these statements by Detective Page, during the two interviews with the Complainant.

- I want to make sure your wishes are taken into consideration...
- I am your advocate.
- ...because that's what I care about...
- I can't kill him...
- If someone touched one of my kids that's how...
- I might actually kill someone if they ... I can see that...
- I like to see people go to prison...
- Next best thing (to killing him) is trying to convict him
- I don't want to step you back emotionally spiritually...
- I'll do whatever my victim wants me to do.
- I will do anything for my victim.
- You are not a bad witness.
- You're very certain of things.
- You're putting the **truth** of what happened to you out there.
- I like seeing people go to prison, don't get me wrong...
- I'll be here and I'll fight as hard as I can . . .
- I'll try to find everything that I can to help you...
- I'm going to put a lot of time and effort into this

8

- Detective Page told the method of her investigation, going to get [Newton] in before I leave. Page described another sexual assault investigation and her methods.
- Detective Page comments that the stigma of being accused of sexual assault is as bad as a conviction. All someone has to do is Google Mark Newton and the accusations child rapist will appear.
- Detective Page advises Complainant that if Complainant was recording their interview the recording would be provided to the defense. Page repeatedly told Complainant it was okay to record but if there was a recording it would have to be turned over to the defense.

These statements clearly demonstrate the thought process of this detective; she was hell bent on either obtaining a conviction of this Defendant, or alternatively, the ruination of his reputation, regardless of the information or evidence.

Her immediate personal attachment to this Complainant is disturbing, and should cause significant reflection about her ability to faithfully and neutrally carry out her duties.

She has gone so rogue, that she even lied to her partner, Detective Seigel. When he pressed her about the 2nd diagram, which he had seen, she had the audacity to tell him, "if it existed, it is in the file." This statement is both deceptive and manipulative.

Further examination of her statements and testimony prove that not only did she try to deceive and deflect another police officer, but she also deceived the prosecutor. On or about April 10, 2017, she advises Ms. Kane that she will deliver the document within a few days. All the while, she knew the document had been destroyed. She made this false representation to the prosecutor after Detective Seigel pressed her about the diagram, and after she told him "IF it exists, it is in the file." (emphasis added)

Clearly, Detective Page's goal was to convince everyone that the 2nd diagram did not exist. This is consistent with her statements in this first interview with the Complainant where

9

she said she'd "do anything for her victim." that she "was her advocate," that although killing

him wasn't an option, both prison and/or just ruining his reputation were not possibilities, but the

goal.

It is uncontroverted that after the 1st interview with the Complainant, the Detective

received information from the Defendant and another witness that contradicted the Complainants

statement and 1st diagram.

She then decided to reinterview the complainant and go over the alleged location again.

It is also uncontroverted that the description and physical appearance of the room where

the alleged incidents were said to have occurred; was critical information going, directly to the

preparation of the defendant's case and critical to an unbiased, fair search for the truth.

Given the chronology of events, the statements of the detective, and the

destruction/concealment and/or suppression of this evidence, it is reasonable to conclude that

Detective Page had full knowledge of the materially exculpable value of the 2nd diagram; that she

knew that if she provided that to the State who would than produce it to the State, that her stated

goal of obtaining a conviction and/or ruining the defendant; would be in jeopardy.

I am not here to surmise or comment on what motivated Detective Page to veer this far

afield from her lawful duty.

However the law requires that when a Court is provided evidence of a breach of duty of

this magnitude, provided evidence of such a flagrant disregard for the laws we live under, and

provided evidence of prejudice and the deprivation of constitutional protections, the Court

MUST act and dismiss the charges with prejudice.

This Defendant is discharged and all costs are vacated.

10

Apx. 00010

It is also uncontroverted that the description and physical appearance of the room where the alleged incidents were said to have occurred; was critical information going, directly to the preparation of the defendant's case and critical to an unbiased, fair search for the truth.

Given the chronology of events, the statements of the detective, and the destruction/concealment and/or suppression of this evidence, it is reasonable to conclude that Detective Page had full knowledge of the materially exculpable value of the 2nd diagram; that she knew that if she provided that to the State who would than produce it to the State, that her stated goal of obtaining a conviction and/or ruining the defendant; would be in jeopardy.

I am not here to surmise or comment on what motivated Detective Page to veer this far afield from her lawful duty.

However the law requires that when a Court is provided evidence of a breach of duty of this magnitude, provided evidence of such a flagrant disregard for the laws we live under, and provided evidence of prejudice and the deprivation of constitutional protections, the Court MUST act and dismiss the charges with prejudice.

This Defendant is discharged and all costs are vacated.


**IT IS SO ORDERED.**


_____
Date

_____
Judge Nancy Margaret Russo

## <u>CERTIFICATE OF SERVICE</u>

A copy of the Opinion was given to all parties in open Court this 11th day of May, 2017.

_____
Nancy Margaret Russo, Judge



6105 PARKLAND BOULEVARD SUITE 200, MAYFIELD HEIGHTS, OH 44124

p. 1.800.355.6446    f. 1.877.355.1355    elkandelk.com

November 4, 2016

Michael Brittain, Esq.
Calfee, Halter & Griswold LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114

    RE:  Our client:  Jacquelyn Ellis

Dear Michael:

As you know, we represent Jacquelyn Ellis, who was sexually assaulted by her then softball coach while an 8th grade student at Laurel School. In that regard, I know your good firm has represented Laurel School along with Marybeth Hogan throughout the course of this very unfortunate and tragic situation. I am sure you have a significant amount of information that has not yet been provided to me, as Laurel School has provided me no information regarding the accused or what their investigation has uncovered.

Mark Newton was a then teacher and coach at Laurel School. In that regard, he was a Laurel employee, and Laurel is responsible for his actions through the doctrine of respondeat superior. Mr. Newton has been indicted on eight (8) felony counts and is pending trial for his sexual assaults on Jacquelyn.

Enclosed for your review, please find the following:

- Liability and Damages Report authored by Ann Wolbert Burgess, DNSc, APRN, BC

- Cost of Services Report authored by Maryanne Cline RN, CRRN, CCM, MSCC, CLCP, CNLCP of BalaCare Solutions.

An Economic Report authored by John F. Burke, Jr., Ph.D. of Burke, Rosen & Associates will be supplemented under separate cover.

At this time, we demand $2,000,000.00 d to settle this matter pre-suit only. This demand is made pursuant to our discussions and under Rule 408.

**ESSENTIAL FACTS**

Mark Newton sexually assaulted Jacquelyn on two (2) separate occasions while she was a middle school student at Laurel School. Mark Newton was her softball coach. Mr. Newton was a then teacher, coach and employee of Laurel School. Mr. Newton used his influence to lure and trap Jacquelyn into the equipment room under the guise of pitching practice, then digitally penetrate her on two occasions. The investigation ultimately was opened, after a long delay, and completed by the Summit County Department of Family and Children Services.

AKRON

CANTON

CINCINNATI

CLEVELAND

COLUMBUS

DAYTON

TOLEDO

YOUNGSTOWN

Cuyahoga County did not investigate; it appears the failure to do so was based upon Mr. Newton's marriage to the head of Cuyahoga County Children and Family Services. Laurel School was on notice of inappropriate behavior on behalf of Mr. Newton prior to the assault on Jacquelyn. I expect discovery will reveal reports of Mr. Newton's inappropriate conduct toward female students prior to this incident, that were either not documented, or resulted in no discipline. Accordingly, his behavior continued to progress to the point that he took advantage of Jacquelyn Ellis.

Ultimately, Jacquelyn Ellis came forward and admitted that these attacks occurred. Jacquelyn suffered emotionally, and the pain manifested itself when she began to cut herself and was hospitalized. She underwent significant medical treatment at University Hospitals and therapy with Erin Forehand, Ph.D.

## LIABILITY

As you further know, Mr. Newton has been indicted on eight (8) felony counts for these two sexual assaults on Jacquelyn Ellis. His criminal case is proceeding through the court at this time. It is clear that liability will be established against Laurel School for negligence, negligent hiring and retention and through respondeat superior as the result of their employee's conduct.

We have had this matter reviewed by an expert witness in these matters, Ann Wolbert Burgess, DNSc, APRN, BC. Dr. Ann Burgess is a clinical specialist in psychiatric nursing with a Master's Degree in Psychiatric Nursing from University of Maryland and a Doctorate Degree in Nursing Science from Boston University. I enclose the expert report and CV of Dr. Burgess for your review and records. As you can see from the enclosed expert report, she is of the opinion that Jacquelyn was a victim of a confidence-style digital rape by Mark Newton who was then the softball coach at Laurel School's Middle School.

Accordingly, liability as to Laurel School will be established based on the prior inappropriate incidents at the school and Laurel's failure to correct and discipline the inappropriate behavior. Moreover, Mr. Newton was an employee of the school and acting within the course and scope of his coaching duties when he took advantage of Jacquelyn who was an innocent Laurel student and athlete.

## DAMAGES

It is clear from common sense and the expert report authored by Dr. Ann Burgess that Jacquelyn suffered physical damages as a result of the digital penetration. These damages include not only the inappropriate touching and the humiliation of that, but the cutting and other physical manifestations. She also suffered from stomach aches, headaches, nightmares and an inability to sleep through the night. Jacquelyn was prescribed significant medications in order to reduce her anxiety. The medications changed her personality, according to her parents.

Jacquelyn suffered trauma-specific symptoms that are permanent due to the neurobiology of the trauma and directly attributable to the negligence of the professional duties of the Laurel employee and Laurel's own negligence. Dr. Ann Burgess outlines those injuries in her report extensively.

Jacquelyn's relationships with peers have been severely affected. She has been diagnosed with depression. She does not enjoy things as she did before, is very self-critical, feels restless and wound up and is less interested in other people. She is clearly suffering from many symptoms of post-traumatic stress, along with flashbacks and nightmares.

Her treatment plan is multi-modal focused in order to reduce her symptom patterns. She will be required to undergo treatment with a trauma specialist. The treatment plan as outlined by Dr. Ann Burgess includes: the current treatment phase, a monitoring phase, and a crisis intervention phase. All these treatments include various modalities that are implemented within a stepwise structure of supportive counseling, stabilization of symptoms, therapeutic structured exercise and activities to help resolve her depression and anxiety.

In addition, the base cost for the future treatment plans for the next ten years for Jacquelyn total $143,122.75. The cost will likely be incurred beyond ten years. Jacquelyn also was hospitalized and received psychological treatment. We will supplement these bills under separate cover. The cost for the treatment plan as outlined by Ann Burgess was provided by Marianne Cline at Balacare. These costs over the next ten years will be reduced to present day value by John F. Burke, Jr., Ph.D. These numbers are conservative and required.

## DEMAND

As we discussed and based upon the very likely liability against Mark Newton and Laurel School, we make a formal demand to resolve this matter pre-suit as to Laurel School and Laurel School only in the amount of $2,000,000.00.

Please contact me upon receipt of this correspondence and review of the enclosed expert reports to advise as to Laurel School's position.

Thank you for your time and attention to this matter.

Very truly yours,

John P. O'Neil

JPO/dmp
Enclosure

Apx. 00015