IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARK A. NEWTON, et al., | : | CASE NO.: 1:17-CV-2545 |
| | : | |
| | : | JUDGE JAMES S. GWIN |
| Plaintiffs, | : | |
| | : | |
| -vs- | : | **PLAINTIFFS' RESPONSE TO** |
| | : | **ELLIS DEFENDANTS' MOTION** |
| JACQUELYN ELLIS, et al., | : | **TO DISMISS/RESPONSE TO** |
| | : | **MOTION FOR JUDGMENT** |
| Defendants. | : | **ON THE PLEADINGS** |

Now come Plaintiffs, Mark A. Newton and Patricia Rideout, by and through undersigned counsel, Larry W. Zukerman, Esq., Paul B. Daiker, Esq., and Adam M. Brown, Esq., and hereby respectfully submits Plaintiffs' Response to the Ellis Defendants' Motion to Dismiss under Civ.R. 12(B)(6), which they have Moved this Honorable Court to reclassify as a Motion to Dismiss under Civ.R. 12(C).  For the reasons more fully set forth in the Memorandum attached hereto and incorporated herein, Plaintiffs respectfully request that this Honorable Court Deny the Ellis Defendants' Motion to Dismiss/ Motion for Judgment on the Pleadings.

Respectfully Submitted,

/s/ Larry W. Zukerman, Esq.
LARRY W. ZUKERMAN, Esq. (#0029498)
PAUL B. DAIKER, Esq. (#0062268)
ADAM M. BROWN, Esq. (#0092209)
Zukerman, Daiker & Lear Co., L.P.A.
3912 Prospect Avenue East
Cleveland, Ohio 44115
(216) 696-0900
Fax (216) 696-8800
lwz@zukerman-law.com
pbd@zukerman-law.com
amb@zukerman-law.com
Counsel for Plaintiffs

1

**MEMORANDUM**

I.   **STATEMENT OF THE CASE**

On November 3, 2017, Plaintiffs Mark A. Newton and Patricia Rideout filed their Complaint in the instant case against Defendants Jacquelyn Ellis, Rodney Ellis, Andrea Ellis (hereinafter "the Ellis Defendants"), City of Shaker Heights, Chief Jeffrey Demuth, Commander John Cole, Sgt. Marvin Lamielle, Det. Jessica Page and John and/or Jane Does 1-5.

Plaintiffs' Complaint, which Plaintiffs initially filed in the Court of Common Pleas, Cuyahoga County, Ohio (Case No.: CV 17 888503) set forth the following causes of action: (1) Bad Faith Suppression/Concealment/Destruction/Nondisclosure of Evidence: Violation of Due Process Pursuant to 42 U.S.C. §1983; (2) Supervisor Liability: Violation of 42 U.S.C. §1983; (3) Failure to Train and/or Supervise Employees: Violation of 42 U.S.C. §1983; (4) Malicious Prosecution: Violation of 42 U.S.C. §1983; (5) Failure to Investigate: Violation of 42 U.S.C. §1983; (6) Defamation (Libel/Slander) (Violation of Ohio Law) (The Ellis Defendants); (7) Civil Conspiracy (Violation of Ohio Law); (8) Malicious Prosecution (Violation of Ohio Law); (9) Abuse of Process (Violation of Ohio Law); (10) False Light (Violation of Ohio Law) (The Ellis Defendants); (11) Intentional Infliction of Emotional Distress (Violation of Ohio Law) (Defendant Jessica Page and the Ellis Defendants); and (12) Loss of Consortium (Violation of Ohio Law) (Claim by Plaintiff Patricia Rideout against all Defendants).

On December 7, 2017, Defendants City of Shaker Heights, Chief Jeffrey DeMuth, Commander John Cole, and Sgt. Marvin Lamielle filed their Notice of Filing of Removal to the United States District Court for the Northern District of Ohio (in Cuyahoga County Case No.: CV 17 888503), as well as their Notice of Removal Pursuant to 28 U.S.C. §§1441, 1446, and

2

1331, with this Honorable Court. On December 8, 2017, the Ellis Defendants filed their Motion to Dismiss, also pursuant to Civil Rule 12(b)(6). *See* Doc. 5.

On December 28, 2017, Plaintiffs filed their First Amended Complaint against all Defendants, which also added New Party Defendant Det. Walter Siegel. *See* Doc. 15. Plaintiffs' First Amended Complaint added numerous paragraphs relating to Defendants Det. Page, City of Shaker Heights, Chief DeMuth, Cmdr. Cole, Sgt. Lamielle and Det. Siegel.  *Id.*

On January 4, 2018, the Ellis Defendants filed their Answer to Plaintiffs' First Amended Complaint, and filed their Counterclaim against Plaintiff Mark A. Newton. *See* Doc. 20. In addition, on January 4, 2018, the Ellis Defendants filed their Motion to Reclassify Ellis Defendants' Motion to Dismiss (hereinafter referred to as Defendants' Motion to Reclassify), which requested that this Honorable Court deem their Motion to Dismiss to actually be a Motion for Judgment on the Pleadings. *See* Doc. 21. As of the time of the filing of this instant Response, this Honorable Court has not ruled on the Defendants' Motion to Reclassify.

For the reasons more fully set forth below, Plaintiffs respectfully request that this Honorable Court Deny the Ellis Defendants' Motion to Dismiss/Motion for Judgment on the Pleadings.

II. **PARTIES AND RELEVANT FACTS**

In short, this lawsuit stems from false allegations of rape made by Defendant Jacquelyn Ellis (J. Ellis) against Plaintiff Mark Newton (Newton) and Defendant Det. Jessica Page's and the Shaker Heights Police Department's unconstitutional actions, inactions, and investigation into J. Ellis' allegations against Newton.

Newton is an attorney licensed in the State of Ohio, and former middle school teacher and softball coach for The Laurel School for Girls ("Laurel") located in Shaker Heights, Ohio. *First Amended Complaint, Doc. 15, at p.6, ¶17; p.7, ¶¶21-22.*

Plaintiff Rideout is Newton's wife; Plaintiff Rideout brings an action against all Defendants for Loss of Consortium, under Ohio law, and reimbursement of the attorney fees and expenses incurred in Newton's criminal defense, resulting from the Defendants' tortious conduct against Newton. *Id. p.5, ¶9; p.72, ¶340.*

In 2012 and 2013, J. Ellis was a student at Laurel for her seventh and eighth grade school years, respectively. *Id. p.7,¶25.* Also during 2012 and 2013, J. Ellis was a member of Laurel's middle school softball team, which Newton and other Laurel faculty members coached. *Id. p.8, ¶26.* Following the 2012-2013 school year, Newton voluntarily left Laurel. *Id.,p.8,¶28.*

On or about August 24, 2014, J. Ellis told her friend that Newton sexually assaulted her on two (2) separate occasions, eighteen (18) months earlier, in an equipment room during indoor softball practices at Laurel. *Id.p.8, ¶31.* These allegations of sexual assault against Newton were false, malicious, made in bad faith, and *per se* defamatory. *Id.p.8, ¶32.* On October 10, 2014, J. Ellis repeated these false statements to her father and mother, Defendants Rodney Ellis ("R. Ellis") and Andrea Ellis (A. Ellis). *Id. p.8,¶33.* Both parents knew immediately, or soon thereafter, that J. Ellis' allegations were false. *Id.p.9,¶36.* The Ellis Defendants then conspired together either initially, or shortly thereafter, to pursue the false allegations for the purpose of seeking money damages against The Laurel School and Newton in the future. *Id.p.9, ¶36.*

The scheme was designed so that J. Ellis would first disclose the alleged sexual assaults to her therapist (a mandatory reporter of abuse), on October 15, 2014 (which was 5 days after J. Ellis told R. Ellis and A. Ellis). *Id.p.9,¶35,37.* On that date, as the Ellis Defendants envisioned,

4

J. Ellis disclosed the false allegations to her therapist, who then reported the allegations of abuse to the Ohio Department of Job and Family Services. *Id.p.10,¶42.* On October 16, 2014, in an email, A. Ellis reported J. Ellis' false allegations to Laurel School's Head of School, Ann Klotz, who relayed the allegations to other school officials, and who also reported the allegations to ODCFS. *Id.p.10, ¶¶41-43.*

J. Ellis then continued to perpetuate her false allegations of sexual assault against Newton during various discussions with therapists and other medical professionals from October 2014 through the present. *Id. p.10,¶44.* On October 21, 2014, during a one-on-one meeting with Laurel's Ann Klotz, J. Ellis again, falsely alleged that approximately eighteen (18) months earlier, when she was in the Eighth Grade, Newton sexually assaulted her. *Id.p.10,¶45.* However, J. Ellis' statements to Ms. Klotz were materially inconsistent with her previous statements to her therapist. *Id.p.11,¶46.* On January 7, 2015, as a result of J. Ellis' false allegations against Newton, Ms. Klotz, published and sent a letter to all Laurel School Families and Alumnae concerning J. Ellis' allegations of sexual assault against Newton. The letter did not specifically name Newton as the individual accused of sexual assault. *Id.p.11,¶47.*

On January 29, 2015, J. Ellis met with and repeated her false allegations to Jennifer Dougherty, a Summit County Children Services' Case Worker *Id.p.11,¶48.* However, J. Ellis' statements to Case Worker Dougherty were materially inconsistent with her previous statements to both her therapist and Ann Klotz, in that J. Ellis falsely alleged to Dougherty that during the alleged assaults, Newton put his hands down her pants only, and not up her shirt, as J. Ellis previously alleged to her therapist and Klotz. *Id. p.11,¶¶49-50.*

On March 23, 2015, Defendant Det. Jessica Page ("Det. Page") interviewed J. Ellis at the Shaker Heights Police Department. *Id. p.11,¶51.* During the interview with Det. Page, J. Ellis

5

again falsely alleged that in April and May of 2013, Newton sexually assaulted her by putting his hands down her pants only, and not up her shirt, on two (2) separate occasions in an "equipment room" during indoor softball practices at Laurel. *Id. p.12,¶54*. At Det. Page's request, J. Ellis drew a diagram of the gymnasium and equipment room where she said the sexual assaults occurred. *Id. p.14,¶59*. The room where J. Ellis alleged the assaults occurred was later determined to be Room Number G003 in The Laurel School; controversy as to the location and contents of Room G003 during the alleged assaults was nearly immediate.

On April 21, 2016, Det. Page and Detective Walter Siegel ("Det. Siegel") conducted a follow-up interview of J. Ellis. *Id.p.17,¶¶74-75*. To prepare for the April 21, 2016 follow-up interview of J. Ellis and to familiarize himself with the case, Det. Siegel reviewed the tape of Det. Page's March 23, 2015 first interview of J. Ellis. While doing so, Det. Siegel discovered that J. Ellis surreptitiously whispered something to herself while Det. Page was out of the room during the first interview; Det. Siegel quickly brought the incident to Det. Page's attention. *Id.p17,¶76*. Thereafter, Det. Page and Det. Siegel reviewed the tape several times and believed that what J. Ellis secretly whispered to herself was the phrase(s), **"I think she got the storage room wrong"** or **"I don't think she had the storage room right"**. *Id.pp17-18,¶77*. Given that there were "a lot of questions" and "disagreements" as to the contents of Room G003 at the time of the alleged assault, Det. Siegel recognized J. Ellis' secret whispering about the room to be "very important." *Id.p18,¶78*.

On April 21, 2016, during the follow-up interview of J. Ellis, Det. Siegel and Det. Page confronted J. Ellis about her surreptitious whispering they observed on the tape of the first interview. Specifically, Det. Page and Det. Siegel spent the first sixteen (16) minutes of the second interview questioning J. Ellis about her surreptitious whispering. *Id.p.18,¶79*.

6

As can be observed on the video recording of the follow-up interview, Det. Page handed J. Ellis a white notepad and instructed her to create another drawing of the "equipment room" and its contents. *Id.p20,¶84.* The video clearly depicts how J. Ellis proceeded to again draw the window, door, shelves, and buckets of softballs. *Id.pp.20-21,¶¶86.* This second diagram was materially inconsistent with the first diagram that J. Ellis created during her first interview. *Id.p.22,¶90.*

On September 12, 2016, Det. Page testified before the Cuyahoga County Grand Jury despite knowing that she lacked probable cause to believe that Plaintiff Newton has sexually abused J. Ellis. *Id.p.23,¶97.* This was because Det. Page knew that due to J. Ellis' statements being irreconcilable with statements of numerous other witnesses, including Sally Hacala, Ann Klotz, J. Ellis' therapist, as well as the lack of any physical evidence to corroborate J. Ellis' allegations, J. Ellis' credibility was seriously undermined and did not provide Det. Page and/or the State of Ohio with probable cause to believe that Newton sexually assaulted J. Ellis. *Id.p.23,¶96.* Det. Page deliberately failed to advise the Grand Jury of J. Ellis' inconsistent second diagram, or her multiple inconsistent statements. *Id.p.23,¶99.* As a result, an Indictment was issued and several news and media outlets published articles reporting J. Ellis' allegations of sexual assault against Newton and Newton's subsequent Indictment, including Channel 19 News, which published an article entitled "Former Shaker Heights girls school softball coach charged with rape." The article named Newton specifically as the individual accused of the sexual assaults. *Id.p.26,¶107.*

Also on September 12, 2016, as a result of J. Ellis' false allegations against Newton, Ann Klotz published and sent another letter to all Laurel School Families and Alumnae informing the community that Newton had been indicted by the Grand Jury for Rape. Unlike the January 7,

2015 community letter from Laurel, the September 12, 2016 letter specifically named Newton as the individual accused of sexual assault against a former student. *Id.p.26,¶108*. Thereafter, on many subsequent occasions, numerous articles identifying Newton as being charged with Rape appeared on various news websites. *Id.pp.26-27,¶109-112, 114*.

On November 4, 2016, the Ellis Defendants, by and through their Attorney John O'Neil, sent a twenty-six (26) pages demand letter to counsel for The Laurel School concerning J. Ellis' allegations against Newton (hereinafter "the demand letter"). *Id.p.28,¶116*.

The Demand Letter stated, in relevant part:

"As you know, we represent Jacquelyn Ellis, who was sexually assaulted by her then softball coach while an 8th grade student at Laurel School….In that regard, he was a Laurel employee, and Laurel is responsible for his actions through the doctrine of respondeat superior…Mr. Newton sexually assaulted Jacquelyn on two (2) separate occasions while she was a middle school student at Laurel School….At this time, we demand $2,000,000.00 d to settle this matter pre-suit only." *Id.p.28,¶117*.

On March 29, 2017, J. Ellis met with Det. Page and Prosecutor Maggie Kane. *Id.p.29,¶120*. During the March 29, 2017 informal meeting, which was not part of a judicial proceeding, J. Ellis re-stated her false allegations of sexual assault against Newton. *Id.p.29,¶121*.

During trial preparations, Newton's attorneys learned that J. Ellis prepared a second diagram, which had never been provided to the defense. *Id.p.30,¶127*. When asked, Det. Page refused to acknowledge the existence of the second diagram, even to Prosecutor Kane. *Id.pp.31-34,¶128-144*. Instead, Det. Page lied to the defense and the prosecutor and claimed there was only one diagram.

On May 8, 2017, Newton's criminal case proceeded to a bench trial before Judge Nancy Margaret Russo of the Cuyahoga County Court of Common Pleas. *Id.p.35,¶149*. During her cross-examination on May 9, 2017, J. Ellis admitted that she drew a second diagram of the

8

equipment room/ Room G003 on April 21, 2016 during her second interview with Det. Page. *Id.p.36,¶165*. Thereafter, defense counsel, the prosecutor and the trial judge questioned Det. Page concerning the second diagram. First, Det. Page stated that she had advised the Prosecutor that there was a second diagram. Later, Det. Page changed her story and admitted that she never advised the prosecutor of the second diagram, even though she new that it was potentially exculpatory, and that the defense had been asking for it. *Id.pp.38-40,¶166-181*.

Thereafter, on May 11, 2017, Judge Russo dismissed the criminal proceedings against Newton with prejudice after she determined that Det. Page, acting under color of state law and in bad faith, suppressed, withheld and/or destroyed materially exculpatory and/or potentially useful evidence to Newton, specifically, a second diagram of the room where J. Ellis alleged the assaults occurred, to prevent the disclosure of the evidence to Newton's defense counsel during the criminal case, thereby violating Newton's constitutional rights to due process and a fair trial.

### III. LAW & ARGUMENT

The Plaintiffs respectfully assert that this Honorable Court must deny the Ellis Defendants' Motion to Dismiss because Plaintiffs First Amended Complaint (Complaint) alleges sufficient factual content to allow this Honorable Court to draw the reasonable inference that the Defendants is/are liable for the claims set forth in Plaintiffs First Amended Complaint.

#### A. Standard of Review

Courts apply the same analysis to motions for judgment on the pleadings under Rule 12(c) as they apply to motions to dismiss under Rule 12(b)(6). *See Warrior Sports, Inc. v. National Collegiate Athletic Ass'n*, 623 F.3d 281, 284 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is

9

nevertheless clearly entitled to judgment." *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted).

To withstand a Rule 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e. more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal sufficient evidence. *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, at 550 U.S. at 555.

In considering a motion for judgment on the pleadings, the court considers the pleadings, which consists of the complaint, the answer, and any written instruments attached as exhibits. Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 7(a) (defining "pleadings" to include both the complaint and the answer); *Hous. Auth. Risk Retention Group, Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004). While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint also may be taken into account." *Barany-Snyder v.*

*Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

**B.     Analysis**

    **1. PLAINTIFFS CLAIMS FOR DEFAMATION AND FALSE LIGHT DO NOT VIOLATE THE STATUTE OF LIMITATIONS**

        **a.     Defamation**

Both of the defamatory statements alleged by Plaintiffs' in their Defamation claim occurred within one-year of the filing of the Complaint and therefore they are not time-barred.

Defamation is a false publication that injures a person's reputation. *Dale v. Ohio Civ. Service Emp. Assn.*, 567 N.E.2d 253, 258 (Ohio 1991). To succeed on a defamation claim, the Plaintiffs must prove five elements: "(1) falsity; (2) the defendant's responsibility for publication to a third person; (3) a tendency to harm plaintiff's reputation by lowering the community's perception of the plaintiff or inducing others to refrain from associating with him; (4) fault; and (5) injury." *Golem v. Village of Put-In-Bay*, 222 F.Supp.2d. 924, 935 (N.D. Ohio 2002). Under Ohio law, a defamation action between private parties must commence within one year of when the cause of action accrued. *See, R.C. § 2305.11(A)*. The defamation statute of limitations begins to run on the date the words are spoken or written, not when the plaintiff became aware of them. *Daubenmire v. Sommers*, 805 N.E.2d 571, 585 (Ohio App. Ct. 2004).

Plaintiffs filed their initial Complaint on November 3, 2017. Plaintiffs Complaint specifically alleges false and defamatory statements made on November 4, 2016 (the November 4, 2016 demand letter) and March 29, 2017 (statements made to law enforcement by J. Ellis), which are clearly within the one-year statute of limitations for Defamation. *See* Compl., at ¶293. Therefore, Plaintiffs' claim for defamation does not violate Ohio's one-year statute of limitations.

As for the Defendants' publication arguments, Defendants' reliance upon *Clark v. Viacom Intern. Inc.*, 617 Fed.Appx. 495 (6th Cir.2015) is misplaced. *Clark* dealt with the continued online availability of the *same exact* internet articles based upon a theory of "continuing defamation". *Id*. The Sixth Circuit rejected the Plaintiff's continuing defamation claims in *Clark* and acknowledged that "defamation claims turn upon individual instances of publication rather than upon a generalized or cumulative effect." *Id*. at 9.

Likewise, in *T.S. v. The Plain Dealer*, 2011-Ohio-2935 the Eighth District Court of Appeals rejected Plaintiffs' republication claims in the context of an alleged defamatory article, that was not modified or altered, but simply republished on the internet twenty (20) years after it was first published. 2011-Ohio-2935 at ¶ 9. *See also Fleming v. Ohio Atty. Gen.*, 2002-Ohio-7352 (10th Dist. Franklin) (rejecting single publication rule for an alleged defamatory judgment lien that simply remained available on the Summit County Court of Common Pleas docket); *Smith v. National W. Life*, 2017-Ohio-4184 (8th Dist. Cuyahoga) (rejecting single publication/ continuous tort rule for the same report of Plaintiff's debt balance, i.e. 'the Vector One Report', that Plaintiff claimed constituted an 'ongoing publication' due to its continued availability on the Vector one's database)

Unlike *Clark*, *The Plain Dealer*, *Fleming,* and *Smith*, Plaintiffs do not set forth a "continuing tort" theory of defamation based upon the same exact publication, or a republication of the same exact defamatory article or statement, but rather cite to two (2) specific and independent defamatory publications by Defendants—the November 4, 2016 demand letter and the March 29, 2017 meeting. Conversely, Plaintiffs' defamation claim involves two (2) separate and distinct publications, one slanderous and one libelous, each to different third parties and neither of which were simply republished duplicates or initial publications that simply remained

12

available and/or accessible. As such, Plaintiffs' claim for defamation for the two (2) specific and independent defamatory publications by the Ellis Defendants are not time-barred by Ohio's one year statute of limitations.

      b.      **False Light Invasion of Privacy**

Likewise, Defendants incorrectly argue that there is only a one (1) year statute of limitations for the claim of False Light Invasion of Privacy (Count Ten). As this Honorable Court has recognized, the statute of limitations for the claim of false light/invasion of privacy in Ohio is four (4) years. See *Linetsky v. City of Solon*, Dist. Court, ND Ohio 2016, Case No. 1:16-CV-52, at fn.159 ("Unlike defamation claims, invasion of privacy claims have a four-year statute of limitations") citing *T.S. v. The Plain Dealer*, 954 N.E.2d 213, 214 (Ohio App. 8 Dist. 2011).

As it is largely undisputed that Defendant J. Ellis made her initial false allegations against Newton to her friend in August 2014, Plaintiffs' claims for False Light Invasion of Privacy set forth in their November 3, 2017 Complaint and their December 28, 2017 First Amended Complaint, is well within Ohio's four (4) year statute of limitations for False Light Invasion of Privacy.

Therefore, Plaintiffs respectfully assert that this Honorable Court should Deny the Ellis Defendants' Motion to Dismiss Plaintiffs' claim for False Light Invasion of Privacy, as set forth in Count Ten of Plaintiffs' First Amended Complaint.

      c.      **Impact upon the Alternative Tort Claims**

The Ellis Defendants attempt to boot-strap a dismissal of the Plaintiffs five (5) other state-law claims against the Ellis Defendants by asserting in their Motion to Dismiss that each of the Plaintiffs' other tort claims are based squarely upon the Ellis Defendants' allegedly "false" claims of sexual abuse, and argue that if this Honorable Court dismisses the counts related to

Defamation and False Light, then this Honorable Court must dismiss the other claims as well. However, for the reasons as set forth above, this Honorable Court should Deny the Ellis Defendants' Motion, and Plaintiffs' Defamation and False Light claims, as well as Plaintiffs' other state-law claims, should survive Defendants' Motion to Dismiss/ Motion for Judgment on the Pleadings.

### 2. THE ELLIS DEFENDANTS' STATEMENTS ARE NOT PRIVILEGED

#### a. Judicial Proceeding Privilege

The Ellis Defendants incorrectly argue that they are entitled to "absolute" immunity for all of the state law claims involving statements the Ellis Defendant(s) made, because of the judicial proceedings privilege. For the reasons below, the statements made by J. Ellis to Det. Page overall, including the statements J. Ellis made to Det. Page and Prosecutor Kane on March 29, 2017, were not part of a "judicial proceeding" and therefore J. Ellis is not immune from liability for said statements.

It is true that Ohio recognizes an absolute privilege from civil liability for statements made "in a judicial proceeding." *See, M.J. DiCorpo, Inc. v. Sweeney*, 634 N.E.2d 203, 209 (Ohio 1994). The Ohio Supreme Court has held that "[a]n affidavit, statement or other information provided to a prosecuting attorney, reporting the actual or possible commission of a crime, is part of a judicial proceeding. The informant is entitled to an absolute privilege against civil liability for statements made." *Id.*

However, the Ohio Supreme Court has not directly addressed whether statements to law enforcement officers are entitled to absolute immunity. Plaintiffs respectfully assert that this Honorable Court must apply the controlling state substantive law (*Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938)), and is bound by the decisions of the state of Ohio's highest court. *See*

14

*Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). Given that Ohio's highest court has not addressed what immunity should be given to statements made to law enforcement, this Honorable Court is forced to predict how the state of Ohio's highest court would resolve the matter. *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir. 2008).

In *Linetsky, supra,* this Honorable Court agreed with Judge Watson of the Southern District of Ohio, and held that "the Supreme Court of Ohio would not consider statements made to the police part of a 'judicial proceeding' and therefore would not extend absolute immunity to statements made to the police." See *Dehlendorf v. City of Gahanna, Ohio*, 786 F. Supp.2d 1358, 1365 (S.D. Ohio 2011). The Court in *Dehlendorf* also recognized that the majority of state courts only extend *qualified* immunity to persons making statements to police about alleged crimes. *Id.* at 1364. In addition, Ohio appellate courts have not consistently extended absolute immunity to statements made to law enforcement personnel. *Compare, e.g. Lasater v. Vidahl*, 979 N.E.2d 828, 830 (Ohio Ct. App. 2012) (applying absolute privilege to those who report criminal activity to police officers) *with Scott v. Patterson*, No. 81872, 2003 WL 2149363, at 2 (Ohio App. Ct. June 26, 2003) (holding that statements to police officers are not made in context of judicial proceedings and therefore absolute immunity does not apply).

Plaintiffs respectfully assert that Det. Page's presence during the March 29, 2017 meeting, notwithstanding Prosecutor Kane's presence, rendered the meeting to be solely investigatory in nature and *not* part of a judicial proceeding. The March 29, 2017 meeting was for the purpose of questioning and confronting J. Ellis concerning problems with date(s) of alleged offenses and the Room where they allegedly occurred, after Newton filed his Notice of Alibi and disclosed corresponding alibi documentation. *Compl.,p.30,¶12*6. Specifically, after

Newton was indicted on September 12, 2016, Det. Page continued to learn of exculpatory information that supported Newton's claims of innocence and which rendered J. Ellis' allegations even more implausible, illogical, highly unlikely to have occurred, and lacking probable cause, including but not limited to the following evidence: (a) the statements of nearly ten (10) witnesses regarding Room G003 being an art room without any sports equipment inside during 2013 (including Jane Berger, who was the art teacher inside G003 during 2013); (b) over one hundred (100) documents provided by The Laurel School, including work orders, emails, and even a picture of Room G003 as an art room during 2013, supporting the witnesses' statements that Room G003 was an art room during 2013 without any sports equipment; and (c) over two-hundred (200) emails provided by defense counsel that **established an alibi for Newton for every single day** during the months of April and May of 2013 (when J. Ellis alleged the assaults to have occurred). *Compl,pp.60-61,¶280*. Det. Page questioned and confronted Defendant J. Ellis about this evidence during the March 29, 2017 investigative interview.

In fact, to demonstrate the investigative nature of the interview, Det. Page even prepared a supplemental police report to reflect her investigative findings following the March 29, 2017 interview. *See Det. Page's Supplemental Police Report, attached hereto as Exhibit 1*. As such, J. Ellis' March 29, 2017 statements were not part of a judicial proceeding and therefore not entitled to absolute immunity but instead, Defendant J. Ellis' statements are only subject to qualified/ immunity privilege.

Qualified privilege only protects statements made to law enforcement, which are made in good faith. *Hahn v. Kotten*, 331 N.E.2d 713, 719 (Ohio 1975) (emphasis added). Plaintiffs have repeatedly asserted that J. Ellis' statements to Det. Page and/or the SHPD were false, made maliciously and were made in bad faith. *Complaint,p.29,¶121-124*. As such, this Honorable

Court should hold Ohio's qualified privilege does not apply to Defendant J. Ellis' bad faith, defamatory statements against Newton to law enforcement.

### b. Impact upon the Alternative Tort Claims

The Ellis Defendants claim that the "absolute" privilege bars not only the defamation claim, but also Plaintiffs' other tort claims. As stated above, because the Ellis Defendants enjoy only a qualified privilege for their statements to law enforcements, and their statements made in bad faith, the Ellis Defendants are not entitled to immunity and this Honorable Court should Deny the Ellis Defendants' Motion.

### 3. MALICIOUS PROSECUTION

Plaintiffs respectfully assert that the Ellis Defendants are mistaken when they claim that the Plaintiffs' Malicious Prosecution cause of action (Count 8) cannot survive as a matter of law.

The Supreme Court of Ohio has held that "[t]o prevail on a state law malicious prosecution claim, a plaintiff must prove the following elements: "(1) malice in instituting or continuing a prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Criss v. Springfield Tp.*, 564 N.E.2d 440, 443 (Ohio 1990). For the purpose of a malicious prosecution claim, courts define malice as "an improper purpose, or any purpose other than the legitimate interest in bringing an offender to justice." *Chris*, 564 N.E.2d 443. Courts can infer malice in the absence of probable cause. *Anderson v. Eyman*, 907 N.E.2d 730, 737, 180 Ohio App.3d 794, 2009-Ohio-102 (Ohio App. 5 Dist. 2009).

Plaintiffs' Complaint alleges sufficient facts to establish that the Ellis Defendants acted with malice when they instituted the criminal prosecution of Newton. The Complaint alleges that on October 10, 2014, J. Ellis made false statements to R. Ellis and A. Ellis that Newton had sexually assaulted her (*Id. p.8,¶33*) and that both parents knew immediately, or soon thereafter,

17

that J. Ellis' allegations were false. *Id.p.9,¶36.* The Complaint further states that instead of immediately reporting the alleged assault, they conspired to wait 5 days and have J. Ellis report the allegations to her therapist, who they knew would be required to report the allegations to the State. *Id.*,p.9,¶37. The Ellis Defendants' conspiracy continued as they pursued the false allegations for the purpose of seeking money damages against The Laurel School and Newton in the future. *Id.p.9,¶36.* The Ellis Defendants' ulterior goal of a financial windfall is supported by the facts that 1) on or before October 15, 2014 (the date that J. Ellis disclosed to her therapist), A. Ellis and/or R. Ellis contacted and/or retained Attorney John O'Neil of the law firm of Elk & Elk (*Id.*,p10,¶40) and 2) the Ellis Defendants' November 4, 2016 Demand letter was not sent until *after* Plaintiff Newton was indicted on September 12, 2016. As such, the Ellis Defendants' malice is overwhelmingly apparent on the face of Plaintiffs' Complaint.

As for probable cause, defendants must have evidence "sufficient to justify an honest belief of the guilt of the accused." *Anderson, at 738.* Although a grand jury indictment is generally prima facie evidence of probable cause, the Plaintiffs can still prove a lack of probable cause with "evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were significantly irregular." *Deoma v. Shaker Heights*, 68 N.E.2d 72, 77 (Ohio App. 8 Dist. 1990). Plaintiffs have alleged *several* irregularities surrounding the grand jury proceedings and Det. Page's actions, and inactions concerning the same, and rendering said proceedings insufficient to establish probable cause in this case. *Compl.*,pp.23-26,¶¶95-106.

Finally, the Ellis Defendants' are incorrect to assert that proceedings are only '"terminated in favor of the accused" "when its final disposition indicates that the accused is innocent" (*Defendants' Motion,p.16)*. In fact, in *Ash v. Ash*, a case cited by Defendants, the

Supreme Court of Ohio held that "an unconditional, unilateral dismissal of criminal charges *or* an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused." 72 Ohio St.3d 520, 651 N.E.2d 945, 947-8 (1995).

In the present matter, there is no question that Newton's case terminated in his favor, as the trial court dismissed the case with prejudice. There is no requirement that the trial court had to state that Newton was innocent. Since the dismissal was with prejudice, the government cannot re-file the charges, and therefore it was clearly terminated in Newton's favor.

4. **ABUSE OF PROCESS**

The Ellis Defendants' are mistaken in their argument that this Honorable Court must dismiss the Plaintiffs claim for Abuse of Process. A claim for abuse of process requires: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298, 626 N.E.2d 115, 118.

The Ellis Defendants claim that the Plaintiffs have failed to sufficiently allege that the legal proceedings were "perverted" by the Ellis Defendants. To the contrary, in their Complaint, the Plaintiffs allege that "[b]y continuing to purposely assert her false claims of sexual assault against Plaintiff Newton" (*Compl.,p.67-68,¶318)* the Defendants demonstrated a perversion, and that the Ellis Defendants further "perverted the criminal proceedings against Plaintiff Newton to accomplish an ulterior purpose for which the proceeding was not designed, specifically including, but not limited to, their attempted collection of $2,000,000.00 from The Laurel School in a pre-suit settlement demand." *Id.,p.68,¶320.* In addition, the Complaint is replete with

19

allegations and/or support for the position that J. Ellis continued her false statements so that the prosecution of Newton continued, even after being presented with proof that 1) the alleged offenses could not have occurred during the time period alleged and 2) the offenses could not have occurred in the location alleged. *Id.*,pp.60-61,¶280.

5. **COUNTS SEVEN (CIVIL CONSPIRACY) ELEVEN (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) AND TWELVE (LOSS OF CONSORTIUM)**

Plaintiffs note that, other than a cursory claim that Counts Seven, Eleven and Twelve must fail if the counts regarding Defamation and False Light are dismissed, the Defendants have not argued that these counts should be dismissed individually on the merits. Therefore, Plaintiffs request this Honorable Court to Deny the Ellis Defendants Motion to Dismiss these three counts.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court Deny the Ellis Defendants' Motion to Dismiss/ Motion for Judgment on the Pleadings.

/s/ Larry W. Zukerman, Esq.
LARRY W. ZUKERMAN, Esq. (#0029498)
Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2018 the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by electronic and/or regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Larry W. Zukerman, Esq.
LARRY W. ZUKERMAN, Esq. (#0029498)

**LOCAL RULE 7.2(f) CERTIFICATION**

Pursuant to Local Rule 7.2(f), I hereby certify that this case has been assigned to the standard track. I further certify that this Memorandum adheres to the twenty-page limitation established for memoranda related to dispositive motions on the standard track.

/s/ Larry W. Zukerman, Esq.
LARRY W. ZUKERMAN, Esq. (#0029498)