UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------------
                                 :

MARK A. NEWTON,  &              :      Case No. 1:17-cv-2545
PATRICIA RIDEOUT,          :

                               :

            Plaintiffs,          :

                               :

vs.                             :      OPINION & ORDER
                               :      [Resolving Docs. 27, 39, 40, 73]

JACQUELYN ELLIS, *et al.*        :

                               :

            Defendants.       :

                               :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Mark Newton was criminally charged with sexually assaulting Defendant Jacquelyn Ellis while he was her middle school softball coach.[1]  Newton alleges that Ellis's allegations are false;[2] Ellis and her parents maintain that they are true.[3]

Plaintiff Newton and his wife, Plaintiff Patricia Rideout, have now sued Jacquelyn Ellis and her parents (the Ellis Defendants), have sued a detective who allegedly withheld evidence (Jessica Page), have sued other law enforcement officers, and have sued the City of Shaker Heights.[4]  The defendants have moved to dismiss or for judgment on the pleadings.[5]

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Detective Page's motion for partial judgment on the pleadings, **GRANTS IN PART** and **DENIES IN PART** the City Shaker Heights Defendants' motion to dismiss, and **GRANTS** the Ellis Defendants'

---

[1] Doc. 15 at ¶ 106.
[2] *See generally id.*
[3] Doc. 20 at 39–41.
[4] *See generally id.*  The Court does not, in this order, address the claims against Defendant Detective Walter Siegel because he is not included in the answer or motion to dismiss with the City and the other officers.  The Court will refer to the City and police officer defendants, except for Siegel, as the Shaker Heights Defendants.
[5] Doc. 27; Doc. 39; Doc. 40.  Plaintiffs oppose. Doc. 44; Doc. 45; Doc. 53.  Defendants reply. Doc. 46; Doc. 55; Doc. 69.

Case No. 1:17-cv-2545
Gwin, J.

motion for judgment on the pleadings.

## I. BACKGROUND

At this stage, the Court must accept all of the allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor.[6]  Although the Court provides the factual background of this case using the Plaintiffs' version, it intends no suggestion as to what the evidence at trial would show.

### A. Jacqueline Ellis's Allegations

From 2009 through 2013, Plaintiff Newton coached the softball team at the Laurel School for Girls in Shaker Heights, Ohio.[7]  In May 2013, following the end of the softball season, Plaintiff Newton left his Laurel School position to spend more time on his law practice.[8]

Defendant Jacquelyn Ellis played on the Laurel School's middle school softball team during the 2011-2012 and 2012-2013 academic years.[9]  At that time, Jacquelyn Ellis was in seventh grade and eighth grade.[10]

All of that is uncontested.  But from there the parties' versions of events diverge sharply.

The complaint asserts that, in August 2014, Ellis (by this point a high school sophomore at the Laurel School) began telling various individuals that Plaintiff Newton had sexually assaulted her while she was in the eighth grade.[11]  She claimed these assaults

---

[6] *See Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 534 (6th Cir. 2017) (quoting *Bikerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016)).

[7] Doc. 15 at ¶¶ 21, 24.

[8] *Id.* at ¶¶ 27–28.

[9] *Id.* at ¶ 25,

[10] *Id.*

[11] *Id.* at ¶¶ 30–31, 33.

-2-

Case No. 1:17-cv-2545
Gwin, J.

occurred in an indoor equipment room at the Laurel School.[12]

Plaintiff Newton claims that Ellis's allegations are false and were made in bad faith.[13]

With their counterclaim, Jacquelyn Ellis and her parents represent these allegations are true.[14]

This dispute forms the basis for all the other claims in this case.

**B. The Ellis Defendants Report the Alleged Abuse**

Plaintiff Newton alleges that Jacquelyn Ellis told her parents, Defendants Rodney and Andrea Ellis, about the alleged assault in August 2014.[15]  He further alleges that they did not take her to the hospital or the police at that time, instead waiting to have her disclose the allegations to her therapist on October 15, 2014.[16]

At her October 15 therapy appointment, the complaint alleges that Plaintiff Jacquelyn Ellis reported that Plaintiff Newton had sexually assaulted her on two occasions.[17]  The therapist reported the allegation to Andrea Ellis immediately after the session.[18]  The complaint alleges that Ellis has continued to make similar allegations to therapists and other medical professionals.[19]

The next day, according to the complaint, Andrea Ellis reported the allegations to Ann Klotz, the Laurel School head of school.[20]  And on October 17, both Ellis's therapist and Klotz reported the allegations to the Ohio Department of Job and Family Services.[21]  Head of School Klotz also informed several Laurel School administrators, teachers, and

---

[12] *Id.* at ¶ 33.
[13] *Id.* at ¶ 32.
[14] Doc. 20 at ¶ 4.
[15] Doc. 15 at ¶ 33.
[16] *Id.* at ¶¶ 34–35.  He claims they did this because the therapist was a mandatory reporter and they thought disclosure to a therapist would strengthen their case against Plaintiff Newton and the Laurel School. *Id.* at ¶ 37.
[17] *Id.* at ¶ 38.
[18] *Id.* at ¶ 39.
[19] *Id.* at ¶ 44.
[20] *Id.* at ¶ 41.
[21] *Id.* at ¶ 42.

Case No. 1:17-cv-2545
Gwin, J.

employees.[22]

Plaintiff Newton asserts that Ellis met with Klotz on October 21, 2014, and repeated her sexual assault allegations.[23]  But, he claims, her description of the assault was materially inconsistent with what Jacquelyn Ellis had told her therapist on October 15.[24]

On January 7, 2015, Head of School Klotz sent a letter to all Laurel School Families and Alumnae concerning Jacquelyn Ellis' allegations, but did not mention Newton by name.[25]

On January 29, 2015, Ellis met with a Summit County Child Services case worker.[26] Plaintiff Newton alleges that Jacquelyn Ellis repeated her sexual assault allegations but described the assault in a way that was inconsistent with the descriptions that Ellis had earlier given to Klotz and her therapist.[27]

## C. Detective Page's First Interview and Initial Investigation

The Shaker Heights Police Department assigned Defendant Jessica Page as the lead detective in Ellis's case.[28]  Detective Page first interviewed Ellis on March 23, 2015.[29] According to Plaintiff Newton, Ellis repeated her allegations to Detective Page, this time consistently with what she told the social services case worker.[30]

Plaintiff Newton alleges that Defendant Page conducted the interview in a biased, unprofessional manner and in bad faith.[31]  In particular, he alleges that she described herself

---

[22] *Id.* at ¶ 43.
[23] *Id.* at ¶ 45.
[24] *Id.* at ¶ 46.
[25] *Id.* at ¶ 47.
[26] *Id.* at ¶ 48.
[27] *Id.* at ¶¶ 48–50.
[28] *Id.* at ¶ 52.
[29] *Id.* at ¶ 51.
[30] *See id.* at ¶¶ 50, 54.
[31] *Id.* at ¶ 56.

-4-

Case No. 1:17-cv-2545
Gwin, J.

as Ellis's "advocate," evinced a motivation to destroy Plaintiff Newton's reputation, and showed a determination to proceed regardless of the evidence.[32]

Plaintiff Newton alleges that, during the course of the March 23, 2015, interview, Defendant Jacquelyn Ellis told Defendant Page that the assaults occurred in the "equipment room."[33] Plaintiff claims that Ellis drew a diagram of the gymnasium area and the equipment room where she contended the assault had occurred (the "March 23 Diagram").[34]

Plaintiff Newton argues that Detective Page soon discussed Ellis's allegations with Head of School Klotz and received information from the social worker and Ellis's therapist, discovering that there was some inconsistency between Ellis's various descriptions of the assault.[35]

Plaintiff Newton also alleges that, on August 25, 2015, Defendant Page learned from Sally Hacala, the assistant softball coach, that the room Ellis identified as an equipment room in the March 23 diagram was actually an art room during the 2012-2013 school year.[36] He alleges that no sports equipment was located in the room at the time of the 2012-2013 alleged assaults.[37]

Plaintiff Newton claims that Detective Page failed to include the factual inconsistencies between Ellis's statements and the nature of the "equipment" room in her reports or to further investigate any inconsistencies.[38]

---

[32] *Id.* at ¶¶ 55–56.
[33] *Id.* at ¶ 57.
[34] *Id.* Plaintiff Newton also alleges that, at some point during this first interview, Jacquelyn "turned her head, leaned into her right shoulder, and whispered into the top pocket of her zip-up jacket." *Id.* at ¶ 62.
[35] *Id.* at ¶¶ 64, 68, 70.
[36] *Id.* at ¶¶ 65–66.
[37] *Id.* at ¶ 66.
[38] *Id.* at ¶ 72.

Case No. 1:17-cv-2545
Gwin, J.

## D. Detective Page's Later Interviews

The complaint alleges that Defendant Jacquelyn Ellis met with Page and another detective, Defendant Walter Siegel, on two additional occasions.[39]

In a second interview on April 21, the officers allegedly questioned Ellis further about the room where the alleged assault occurred.[40]  The complaint alleges that in this interview, Ellis described the room as containing "buckets of softballs and large metal storage shelving units."[41]  Ellis also drew a second diagram (the April 21 diagram) of the storage room.[42] Plaintiff Newton alleges that this diagram was materially inconsistent with the March 23 diagram and, therefore, materially exculpatory.[43]

According to the complaint, Defendant Page—despite knowing of the April 21 diagram's potential significance—did not mention it in her reports or include it in the case file or disclose it to the defense.[44]  Newton also alleges that Page acted in a biased fashion during this interview.[45]

## E. The State Criminal Proceedings

Ohio indicted Plaintiff Newton in September 2016 on charges of rape, kidnapping, gross sexual imposition, and sexual battery.[46]  Plaintiff Newton alleges that Defendant Page failed, during her grand jury testimony, to inform the jurors about her own personal bias against Plaintiff Newton or the alleged contradictions in Jacquelyn Ellis's statements and

---

[39] *Id.* at ¶¶ 74–75.
[40] *Id.* at ¶ 82. In this second interview, Plaintiff Newton also alleges that detectives questioned Ellis about her covert whispering during the first, March 23, interview. *Id.* at ¶ 76–79.  He claims that the officers believed, based on video footage of the interview, that Ellis whispered "I think she got the storage room wrong" or "I don't think she had the storage room right." *Id.* at ¶ 77.
[41] *Id.* at ¶ 83.
[42] *Id.* at ¶ 86
[43] *Id.* at ¶¶ 89–90.
[44] *See id.* at ¶¶ 91–93.
[45] *Id.* at ¶ 87.
[46] *Id.* at ¶ 106.

Case No. 1:17-cv-2545
Gwin, J.

diagrams.[47] He claims that the grand jury would not have indicted him if it had known these facts.[48]

Following the indictment, stories appeared in various media outlets between September 12, 2016, and September 26, 2016, reporting on the accusations and court proceedings against Newton.[49] Moreover, Head of School Klotz sent another letter to families of Laurel School students and school alumni informing them of the indictment, this time including Newton's name.[50] And information about the case was available on the Cuyahoga Court of Common Pleas' website.[51]

In November 2016, the complaint alleges that the Ellis Defendants sent a demand letter to the Laurel School describing Ellis's accusations against Newton and asking for $2 million.[52]

On March 29, 2017, Jacquelyn Ellis met with Defendant Page and Prosecutor Maggie Kane.[53] The complaint alleges that this was an informal meeting rather than part of the judicial process and that Ellis repeated her allegations during the meeting.[54]

During the lead-up to his criminal trial, Plaintiff Newton's defense counsel (apparently after reviewing a tape of the April 21 interview) realized that Ellis drew a second diagram.[55] He contacted Prosecutor Kane and Defendant Detective Siegel to request a copy.[56] Plaintiff Newton's criminal defense attorney was told that Defendant Page denied that Ellis had ever

---

[47] *Id.* at ¶¶ 99–102.
[48] *Id.* at ¶¶ 103, 105.
[49] *Id.* at ¶¶ 107, 109–14.
[50] *Id.* at ¶ 108.
[51] *Id.* at ¶ 115.
[52] *Id.* at ¶¶ 116–17.
[53] *Id.* at ¶ 120.
[54] *Id.* at ¶¶ 121–23.
[55] *Id.* at ¶ 127.
[56] *Id.* at ¶¶ 128, 133–34,136–37.

Case No. 1:17-cv-2545
Gwin, J.

drawn a second diagram.[57]  Page allegedly claimed that Ellis had merely drawn on top of the

first diagram.[58]  Page also informed Siegel that if there had been a second diagram, it would

have been in the file.[59]  Siegel checked the file and informed defense counsel that there was

only one diagram.[60]

Plaintiff Newton's criminal trial began on May 8, 2017.[61]  During her direct

examination, Jacquelyn Ellis testified that at the time she was assaulted the equipment room

was used as an art room during the day due to renovations on the third floor of the school.[62]

But, while Ellis was being cross examined, Jacquelyn Ellis revealed that she had, in fact,

drawn two diagrams for the police.[63]

The state court held an evidentiary hearing on the failure to disclose the April 21

diagram to the defense.[64]  During that hearing, it became clear that Defendant Page had

concealed the April 21 diagram from both the prosecutor and the defense and had lied to

Defendant Siegel about the existence of the diagram.[65]

The state court dismissed the charges against Plaintiff Newton as a discovery

sanction.[66]

## F. Procedural History

Plaintiffs Newton and Rideout filed this lawsuit on December 7, 2017.[67]  The

complaint alleges that Detective Page, Detective Siegel, and the Shaker Heights Defendants

---

[57] *Id.* at ¶¶ 130–32, 135.
[58] *Id.* at ¶ 135.
[59] *Id.* at ¶ 139.
[60] *Id.* at ¶¶ 140–43.
[61] *Id.* at ¶ 149.
[62] *Id.* at ¶ 157.
[63] *Id.* at ¶¶ 164–65.
[64] *Id.* at ¶ 169.
[65] *Id* at ¶¶ 170–176.
[66] *Id.* at ¶¶ 199–202.
[67] *See generally id.*

Case No. 1:17-cv-2545
Gwin, J.

are liable under 42 U.S.C. § 1983 for concealing exculpatory evidence[68] and malicious prosecution.[69]  Plaintiffs also assert § 1983 claims against the City of Shaker Heights and Page's supervisors under a theory of supervisory liability[70] and for failure to properly train Page.[71]  In addition, they assert a failure to intervene claim against Defendant Siegel[72] and a failure to investigate claim against Page.[73]

Plaintiffs also make various state law claims.  They assert a civil conspiracy claim against all the Defendants.[74]  They assert claims of intentional infliction of emotional distress[75] against the Ellis Defendants and Page.  They assert further claims for defamation,[76] false light,[77] malicious prosecution,[78] and abuse of process[79] against the Ellis Defendants. Plaintiff Rideout makes a loss of consortium claim against all the Defendants.[80]

The defendants, except for Defendant Siegel, move for dismissal or for judgment on the pleadings as to some or all of the claims against them.[81]  Plaintiff Newton opposes.[82]

## II. LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim or motion for judgment on the pleadings, the Court construes the complaint in the light most favorable to the nonmoving party, accepting its allegations as true, and drawing all reasonable inferences

---

[68] *Id.* at ¶¶ 253–64.
[69] *Id.* at ¶¶ 276–84.
[70] *Id.* at ¶¶ 265–69.
[71] *Id.* at ¶¶ 265–75.
[72] *Id.* at ¶¶ 341–42.
[73] *Id.* at ¶¶ 285–91.
[74] *Id.* at ¶¶ 299–304.
[75] *Id.* at ¶¶ 331–37.
[76] *Id.* at ¶¶ 292–98.
[77] *Id.* at ¶¶ 322–30.
[78] *Id.* at ¶¶ 305–16.
[79] *Id.* at ¶¶ 317–21.
[80] *Id.* at ¶¶ 338–40.
[81] Doc. 27; Doc. 39; Doc. 40.
[82] Doc. 44; Doc. 45; Doc. 53.  Defendants reply. Doc. 46; Doc. 55; Doc. 69.

Case No. 1:17-cv-2545
Gwin, J.

in favor of finding the complaint sufficient.[83]  In order to survive a motion to dismiss or for judgment on the pleadings, the complaint must allege sufficient facts "to state a claim for relief that is plausible on its face."[84]  While "detailed factual allegations" are unnecessary, a counter-plaintiff must provide more than a "formulaic recitation of the elements of a cause of action."[85]

## III. ANALYSIS

### A. Suppression of Evidence Claim

The Court begins with Plaintiff Newton's suppression of evidence claim.[86]  In *Brady v. Maryland*, the Supreme Court held that, in a criminal case, the government has a constitutional obligation to disclose exculpatory evidence to the defense.[87]  *Brady* imposes disclosure obligations on police officers and prosecutors and allows a Defendant to bring a lawsuit against either under § 1983.[88]

In *Strickler v. Greene*[89] the Supreme Court held that "strictly speaking, there is never a real "*Brady* violation" unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  It follows that, a *Brady* claim does not lie when a criminal defendant is not convicted.[90]

---

[83] *Cates*, 874 F.3d at 534 (quoting *Bikerstaff*, 830 F.3d at 396); *Engler v. Arnold*, 862 F.3d 571, 574–75 (6th Cir. 2017) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir. 2006)).

[84] *See Nikolao v. Lyon*, 875 F.3d 310, 317 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[85] *See id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Engler*, 862 F.3d at 575 (quoting *Ashcroft*, 556 U.S. at 678)).

[86] Although there are two plaintiffs in this case, the Court will refer to most of the claims as Plaintiff Newton's claims, as it was his rights that were allegedly violated.  To the extent that Plaintiff Rideout also has a claim, the Court's discussion of Plaintiff Newton's claims also applies to her unless otherwise indicated.

[87] 373 U.S. 83 (1963).

[88] *See D'Ambrosio v. Marino*, 747 F.3d 378, 389–90 (6th Cir. 2014).

[89] *Strickler v. Greene*, 527 U.S. 263, 281(1999)

[90] *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) ("Because the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence."); *see also Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff . . . was never convicted and, therefore, did not suffer the effects of an unfair trial.  As such, the facts of this case do not implicate the protections of *Brady*."); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) ("Regardless of any misconduct by government agents before or during

Case No. 1:17-cv-2545
Gwin, J.

After all, establishing a *Brady* violation requires proving that there is a reasonable probability that, but for the suppression of exculpatory evidence, the result of the trial would have been different.[91]  A defendant who has not been convicted cannot do that.  At best, he can show that the exculpatory evidence provides additional proof that the trial's outcome was the correct one.[92]  As the Sixth Circuit has explained: "[b]ecause the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence."[93]

In this case, the criminal charges against Plaintiff Newton were dismissed.  And the Ohio 8th District Court of Appeals has recently affirmed that dismissal.[94]  As a result, he cannot state a plausible *Brady* claim.  While Newton stresses that he was not acquitted,[95] the state criminal proceeding was unquestionably "terminated in [his] favor."[96]

Plaintiff Newton protests that he is not asserting a *Brady* claim, but is instead asserting a due process claim.[97]  That argument fails because a *Brady* claim *is* a due process claim and a suppression or destruction of evidence claim is a *Brady* claim, regardless of whether it is directed at prosecutors or the police.[98]  Newton cannot avoid controlling rulings that stop his claim merely by declining to explicitly invoke *Brady*.

The Court therefore **GRANTS** Defendant Page's motion for judgment on the pleadings

---

trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial.").  Plaintiffs argue that *McCune* and these other cases are wrongly decided and point out that there is a circuit split on the question.  Doc. 53 at 5–8.  But this Court has no power to disregard the Sixth Circuit's decision in *McCune*.

[91] *Strickler v. Greene*, 527 U.S. 263, 280–81 (1999).

[92] *Smith v. Almada*, 640 F.3d 931, 942 (9th Cir. 2011) (Gwin, J., concurring).

[93] *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988).

[94] *State v. Newton*, No. 105771, 2018 WL 1778658 (Ohio Ct. App. April 12, 2018).

[95] Doc. 53 at 4–5.

[96] *McCune*, 842 F.2d at 807.

[97] Doc. 53 at 3–4.

[98] *See Moldowan v. City of Warren*, 578 F.3d 351, 376–82 (6th Cir. 2009) (explaining that *Brady* was a due process opinion and that police officers as well as prosecutors have *Brady* obligations); *see also D'Ambrosio*¸747 F.3d at 389–90 (explaining how a police officer's *Brady* obligations differ from a prosecutor's *Brady* obligations).

-11-

Case No. 1:17-cv-2545
Gwin, J.

and the Shaker Heights Defendants' motion to dismiss as to Newton's *Brady* claim.

## B. Federal Malicious Prosecution Claim Against Page and the Shaker Heights Defendants

The Court next considers Plaintiff Newton's constitutional malicious prosecution claim against Page and the Shaker Heights Defendants.

In order to state a claim for malicious prosecution, a plaintiff must plausibly allege that: (1) a criminal prosecution was initiated against the plaintiff; (2) the defendant made, influenced, or participated in the decision to prosecute; (3) there was not probable cause to prosecute; (4) the plaintiff suffered a deprivation of liberty as a result of the prosecution; and (5) the criminal prosecution was resolved in the plaintiff's favor.[99]

Here, a criminal prosecution was initiated against the Plaintiff.  The Plaintiff's complaint also sufficiently alleges that Defendant Page influenced and likely participated in the decision to prosecute Plaintiff Newton.  Finally, the Plaintiff sufficiently alleges that the plaintiff suffered a liberty deprivation from the prosecution; and sufficiently alleges that the criminal prosecution was resolved in the Plaintiff's favor.

A malicious prosecution claim under § 1983 fails "when there was probable cause to prosecute."[100]  Although it is a somewhat close question, the Court cannot say, at this time, that Plaintiff Newton's claim should fail because probable cause would otherwise exist if Defendant Page had fully disclosed conflicting and undermining evidence.

Probable cause exists when reasonably trustworthy facts and circumstances warrant a belief by a prudent person that the suspect has committed an offense.  Probable cause requires a practical, common sense determination that there is a "fair probability" or

---

[99] *Nikolao,*, 875 F.3d at 317 (quoting *Ashcroft,* 556 U.S. at 678); *Sykes v. Anderson,* 625 F.3d 294, 308–09 (6th Cir. 2010).
[100] *Stricker v. Township. of Cambridge,* 710 F.3d 350, 365 (6th Cir. 2013) (citation omitted).

Case No. 1:17-cv-2545
Gwin, J.

"substantial chance" that a person is engaged in criminal activity or evidence of criminal activity will be found in a given location.[101]

Defendant Jacquelyn Ellis alleged that Plaintiff Mark Newton twice molested her when Ellis was an eighth grader.[102]  She made these allegations when she was a high school sophomore, roughly eighteen months after the alleged molestations.[103]  She described the molestations as occurring in an equipment room.[104]

Plaintiffs allege that Defendant Page failed to disclose to the grand jury inconsistencies in Jacquelyn Ellis's version of events.[105]  More importantly, receiving information about Ellis's allegations from Head of School Klotz, the social worker and Ellis's therapist Detective Page learned there inconsistencies between Ellis's various descriptions of the assault.[106]  Page also knew that Defendant Jacquelyn Ellis had drawn inconsistent diagrams of the alleged molestation location.[107]  And after August 25, 2015, Defendant Page learned that the room Defendant Jacquelyn Ellis identified as an equipment room used for the molestation was actually an art room during the 2012-2013 school year.[108]  During the March 23, 2015, interview, Defendant Jacquelyn Ellis had told Defendant Page that the assaults occurred in the sports equipment room, not an art room.[109]

Probable cause involves a review of the totality-of-the-circumstances.  Plaintiffs generally allege that, in order to manufacture probable cause before the grand jury,

---

[101] *See Illinois v. Gates*, 462 U.S. 213, 238, 243 n.13 (1983); *see also United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011) ("The magistrate judge properly found probable cause.  Certainty is not required, but rather a fair probability and something more than mere suspicion.").
[102] Doc. 15 at ¶¶ 31, 33, 38.
[103] *See id.* at ¶¶ 25,31,33.
[104] *Id.* at ¶33.
[105] *Id.* at ¶¶ 99–100.
[106] *Id.* at ¶¶ 64,68, 70.
[107] *Id.* at ¶¶ 86, 89–90.
[108] *Id.* at ¶¶ 65–66.
[109] *Id.* at ¶ 57.

Case No. 1:17-cv-2545
Gwin, J.

Defendant Page intentionally failed to disclose exculpatory evidence of Defendant Jacquelyn Ellis's inconsistent statements; failed to disclose inconsistent drawings of the alleged crime scene and failed to disclose that Ellis had wrongly identified the crime location as a sports equipment room.

At this point, the Court cannot say that probable cause necessarily existed if these inconsistencies are considered.[110]

For those reasons, the Court will **DENY** Defendant Page's motion for judgment on the pleadings and the Shaker Heights Defendants' motion to dismiss as to the malicious prosecution claim.

## C. Failure to Investigate Claim

The open question as to whether there was probable cause to prosecute Plaintiff Newton also defeats Defendant Page's motion as to the failure to investigate claim.  "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence to exculpate the accused."[111]  But in this case, the Court cannot say based on the allegations in the complaint that probable cause existed.  The Court therefore **DENIES** Page's motion for judgment on the pleadings as to that claim.

## E. *Monell* Claim and Supervisory Liability Claim

To the extent that Plaintiff Newton intends to hold the Shaker Heights Defendants

---

[110] While the fact that Plaintiff Newton was indicted creates a presumption of probable cause, that presumption is rebutted where—as here—there are plausible allegations that the government deceived the grand jury.  *See King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017) ("We hold that where (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury), the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.").
[111] *Wilson*, 477 F.3d at 336 (quoting *Ahlers*, 188 F.3d at 371).

Case No. 1:17-cv-2545
Gwin, J.

liable for the suppression of exculpatory evidence, the failure of his *Brady* claim stops his supervisory liability and *Monell* claims.[112]  The Court will therefore **GRANT** the motion for judgment on the pleadings as to those claims to the extent they are premised on the alleged *Brady* violation.

The viability of the supervisory liability and *Monell* claims as to the malicious prosecution claims and failure to investigate claim is a closer question.

There is no § 1983 *respondeat superior* liability; instead, Newton must show that the supervisors *themselves* acted unconstitutionally.[113] "[A] mere failure to act will not suffice to establish supervisory liability."[114]  Rather, the plaintiff must show that the supervisor engaged in some "active unconstitutional behavior."[115]  "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it."[116] "[T]he plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."[117]

Here, for purposes of this motion to dismiss, Plaintiff has met his burden only as to Defendant Sergeant Marvin Lamielle.  Lamielle performed Page's December 2015 performance evaluation.[118]  At the time, Page had been the lead detective in the Ellis matter for nine months.[119]  Lamielle criticized Page and noted that Page "was not yet 'a professional fact finder,'" "makes subjective decisions to put someone in jail," "struggled with

---

[112] *See Graham e x rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 382 n.4 (6th Cir. 2004).
[113] *Ashcroft*, 556 U.S. at 676–77.
[114] *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).
[115] *Id.* (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).
[116] *Id.* (quoting *Shehee v. Luttrell* 199 F.3d 295, 300 (6th Cir. 1999)) (alteration and emphasis in original).
[117] *Id.* (quoting *Shehee*, 199 F.3d at 300).
[118] Doc. 15 at 221.
[119] *Id.*

-15-

Case No. 1:17-cv-2545
Gwin, J.

documenting complex issues," and "had a tendency to become emotionally attached to an issue."[120] Lamielle further wrote that, while he commended Page for her compassion and concern for others, "[s]he must guard against allowing that compassion to cloud her judgment . . . when dealing with people who have great reason to lie to her."[121]

Despite these concerns, concerns that present a risk that Page might attempt to secure the criminal prosecution of suspects without probable cause, Lamielle gave Page an "Exceeds Standards" rating and did not review the reports of her investigation into Jacquelyn Ellis's allegations.[122]  At this early motion to dismiss stage, this is enough to sufficiently allege that Lamielle implicitly authorized or knowingly acquiesced in Page's alleged unconstitutional conduct.

The Court will therefore **DENY** the motion to dismiss the supervisory liability claim against Sergeant Lamielle as to the malicious prosecution and failure to investigate claims.

Plaintiff Newton's supervisory claims against Chief Jeffrey DeMuth and Commander John Cole, however, fail.  Plaintiff makes only conclusory allegations that they had any knowledge of Page's actions.  As a result, his supervisory claim against them fails.

As for Plaintiff Newton's *Monell* claim against the City of Shaker Heights for malicious prosecution, failure to investigate, and failure to train, he has also failed to state a claim.  To succeed in mounting a § 1983 claim against a municipality, he must show that the "execution of [the municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," caused his constitutional

---

[120] *Id.* at ¶¶ 225, 227–28.
[121] *Id.* at ¶ 228.
[122] *Id.* at ¶¶ 226, 229.

Case No. 1:17-cv-2545
Gwin, J.

injury.[123]

Here, most of Plaintiff Newton's policy allegations deal with the failure to turn over exculpatory evidence, not to the pursuit of criminal prosecutions without probable cause or the failure to conduct adequate investigations.  As to malicious prosecution and the failure to investigate, Plaintiff has, at most, pointed to one or two incidents—including Page's investigation of Jacquelyn Ellis's accusations—where one or more supervisors failed to adequately discipline officers who did not adequately document their investigations or remain sufficiently objective.  That is not enough to establish an official policy sufficient to support a *Monell* claim.[124]

The Court will therefore dismiss the supervisory liability claims against Chief DeMuth and Commander Cole, as well as the remaining *Monell* claims against the City of Shaker Heights.

## F. Defamation and False Light Claims Against the Ellis Defendants

The Ellis Defendants argue that Plaintiff Newton's defamation and false light claims against them are time barred and that, in any event, they are entitled to judicial immunity.[125]

### 1. Statute of Limitations.

Ohio law establishes a one year statute of limitations for libel and slander claims.[126] And, despite Plaintiff Newton's arguments to the contrary, [127] that time limit also applies to false light claims, at least where they "involv[e] allegations that would also support a

---

[123] *Monell v. Dep't. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978).
[124] *See Graham*, 358 F.3d at 377 ("The fact that individual actors 'may occasionally make mistakes . . . says little about the . . . legal basis for holding [a municipality] liable.'" (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)) (omissions in original)).
[125] Doc. 39 at 9–17.
[126] O.R.C. § 2305.11(A).
[127] Doc. 45 at 11–12.

-17-

Case No. 1:17-cv-2545
Gwin, J.

defamation claim."[128]  Otherwise, the one year statute of limitations on defamation claims would be meaningless.[129]

It is true that, in *Linetsky v. City of Solon*, this Court previously held that false light claims were not governed by the one-year limitation period in O.R.C. § 2305.11(A), but were instead governed by a longer, four-year statute of limitations.[130]  And the Ohio 8th District Court of Appeals apparently reached a similar conclusion in *T.S. v. Plain Dealer*.[131]

But, though it strives for consistency, this Court is not bound by its earlier decisions.[132] Moreover, where the state supreme court hasn't ruled on a question, it must reassess its interpretations of state law in light of new state courts of appeals decisions, with an eye to predicting how the state supreme court would rule.[133]

Upon further reflection, the Court is persuaded by the well-reasoned opinion of the 10th District Court of Appeals in *Stainbrook v. Ohio Secretary of State*, especially when it is compared to the conclusory analysis in *Plain Dealer* and a footnote of the *Linetsky* decision. The Court is further persuaded by the fact that its sister court has reached a similar conclusion.[134]

Plaintiffs' complaint was filed in state court on November 3, 2017.[135]  Thus, only defamation claims that accrued after November 3, 2016, can be considered timely.[136]  A

---

[128] *Stainbrook v. Ohio Sec'y. of State*, 88 N.E.3d 1257, 1265 (Ohio Ct. App. 2017).

[129] *Id.*

[130] No. 1:16-cv-52, 2016 WL 6893276, at *15 n.159 (N.D. Ohio Nov. 11, 2016).

[131] 954 N.E.2d 213, 214 (Ohio Ct. App. 2011).

[132] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."(quoting 18 James W. Moore et al., *Moore's Fed. Practice* § 134.02(1)(D) (3d ed. 2011))).

[133] *See Mich. First Credit Union v. Cumis Ins. Soc'y, Inc.*, 641 F.3d 240, 252 (6th Cir. 2011) ("[A]n intermediate appellate court's judgment that announces a rule of law is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." (quoting *FL Aerospace v. Aetna Cas. & Sur. Co.*, 897 F.2d 214, 218–19 (6th Cir. 1990))(alteration in original)).

[134] *Murray v. Moyers*, No. 2:14-cv-2334, 2015 WL 5626509 (S.D. Ohio Sept. 24, 2015).

[135] Doc. 1-1 at 3.

[136] *See* O.R.C. § 2305.11(A).

-18-

Case No. 1:17-cv-2545
Gwin, J.

defamation or false light claim accrues on the date of the allegedly false statement's first publication.[137]  The Court therefore finds that any defamation or false light claim premised on statements made by the Ellis Defendants before November 3, 2016, is untimely and **GRANTS** the motion for judgment on the pleadings as to those claims.

### 2. Judicial Immunity

Defendant points to only two statements that were made after November 3, 2016:  (1) the demand letter sent to the Laurel School; and (2) Ellis's statements to a prosecutor and Detective Page in a meeting on March 29, 2017.[138]  The Ellis Defendants argue that they are protected from liability as to those statements by judicial proceedings immunity.[139]

In Ohio, "[i]t is a well-established rule that judges, counsel, parties, and witnesses are absolutely immune from civil suits for defamatory remarks made during and relevant to judicial proceedings."[140]  That privilege "extends to every step in the proceeding[s], from beginning to end," including "an informal complaint to a prosecuting attorney."[141]  Indeed, as long as "the allegedly defamatory statement bears some reasonable relation to the judicial proceeding in which it appears," absolute immunity applies.[142]

Ellis's statements at the March 29 meeting and any statements in the demand letter bear a reasonable relation to judicial proceedings.[143]  The presence of Defendant Page at the meeting with the prosecutor does not dispel immunity; indeed, the investigating officer's

---

[137] *See Boyd v. Bressler,* 18 F. App'x. 360, 366 (6th Cir. 2001).
[138] Doc. 45 at 10–11.
[139] Doc. 39 at 13–17.
[140] *Willitzer v. McCloud,* 453 N.E.2d 693, 695 (Ohio 1983).
[141] *MJ. DiCorpo, Inc. v. Sweeney,* 634 N.E.2d 203, 209–10 (Ohio 1994) (quoting Prosser & Keeton, *Law of Torts* § 144 (5th ed. 1984)).
[142] *Surace v. Wuliger,* 495 N.E.2d 939, at ¶ 1 of the syllabus (Ohio 1986).
[143] *See Theiss v. Scherer,* 396 F.2d 646, 648–49 (6th Cir. 1968) (holding that letter sent by attorney regarding a trust which accused the opposing party of engaging in a "little piece of blackmail" was related to a judicial proceeding and thus could not be the basis of a libel suit).

-19-

Case No. 1:17-cv-2545
Gwin, J.

presence at a meeting with the prosecutor is to be expected.  Nor does Plaintiff Newton's

allegation that this meeting was an informal meeting[144] change the Court's analysis: informal

or not, it still seems to have been related to the criminal case.  And sending a demand letter

is a routine and expected opening litigation move.

Moreover, to the extent that there are other post November 3, 2016, statements

alleged in the complaint, they are plainly judicial statements.  For instance, Jacquelyn Ellis's

trial testimony would certainly fall within the confines of judicial immunity.  While Plaintiffs

allege that Ellis "continued to make defamatory statements" to medical professionals "from

October 2014 to the present,"[145] that allegation is far too conclusory to allow the defamation

or false light claims to survive the motion to dismiss.

The Court **GRANTS** the Ellis Defendants' motion to dismiss Newton's defamation

claims.

### G. Remaining Claims Against the Ellis Defendants.

Plaintiff Newton's civil conspiracy, malicious prosecution, abuse of process, and

intentional infliction of emotional distress (IIED) claims against the Ellis Defendants also fail.

These claims are variations on his defamation claims.  As a result, the same statute of

limitations and judicial immunity problems that doom his defamation claims defeat his other

tort claims.[146]  The Court therefore **GRANTS** the Ellis Defendants' motion to dismiss those

---

[144] Doc. 15 at ¶ 121–23.  The complaint emphasizes that the meeting "was not part of a judicial proceeding," but does not allege that it was unrelated to a judicial proceeding.  *Id.* at ¶ 121.  As the analysis above makes clear, statements do not have to have been made during a formal proceeding to be protected by judicial proceedings immunity.

[145] *Id.* at ¶ 44.

[146] *Montgomery v. Ohio State Univ.*, No. 11AP-1024, 2012-Ohio-5489, ¶¶ 13–17, 2012 WL 5949038, at *3–4 (Ohio Ct. App. 2012) ("Despite his attempt to recast his defamation claim in terms of negligence, the fact remains that appellant sought recovery for the alleged publication of false information to a third party.  Therefore, we find that the trial court was correct in construing appellant's first cause of action as a claim for defamation" (footnote omitted)); *see also Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) ("Federal Rule of Civil Procedure 8(f) states that 'All pleadings shall be construed so as to do justice.'  This rule directs courts to construe pleadings liberally within the standards of the notice-

Case No. 1:17-cv-2545
Gwin, J.

claims.

### H. Remaining Claims Against Defendant Page and the Shaker Heights Defendants.

Defendant Page does not move to completely dismiss Plaintiff Newton's intentional infliction of emotional distress claim against her.  Instead, she seeks to dismiss that claim only insofar as it is simply a recasting of his malicious prosecution and *Brady* claims.[147]  The Court will **GRANT** that motion insofar as the intentional infliction of emotional distress claim is a recasting of his *Brady* claim, but **DENY** the motion to the extent that the intentional infliction of emotional distress claim is distinct from the *Brady* claim..

The Court will also dismiss his civil conspiracy claims against Page and the Shaker Heights Defendants to the extent that they are attempts to recast his *Brady* claims.

The Shaker Heights Defendants argue that the civil conspiracy claim cannot survive against them because it requires that an underlying state tort law claim also be alleged against them.[148] But a civil conspiracy claim can be based on a malicious prosecution claim,[149] and the Court sees no reason why the fact that Newton's claim is a federal rather than state law malicious prosecution claim should make any difference. Thus, because the malicious prosecution claims against Page, Siegel, and Lamielle survive, the civil conspiracy claims against those Defendants do as well.  The conspiracy claims against the other Shaker Heights Defendants do not, because all of the other claims against those defendants have been dismissed.

---

pleading regime mandated by the Federal Rule of Civil Procedure. . . . Therefore, the Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint.").

[147] Doc. 40 at 11–12.

[148] Doc. 27 at 21–22.

[149] *Rachlow v. Dee*, No. 18927, 2002 WL 91288, at *3–5 (Ohio Ct. App. 2002).

Case No. 1:17-cv-2545
Gwin, J.

Moreover, although the Shaker Heights Defendants contend that Plaintiff Newton failed to plead a conspiracy with sufficient particularity, there is enough in the complaint to suggest an agreement, whether tacit or explicit, between at least Detective Page, Detective Siegel, and Sergeant Lamielle, or some combination thereof.

The Court therefore **GRANTS** the motions to dismiss or for judgment on the pleadings as to the IIED claims against Page and the civil conspiracy claims against her and the Shaker Heights Defendants only insofar as they are duplicative of the *Brady* claim or are against Chief DeMuth, Commander Cole, or the City of Shaker Heights.

### I. Claims Against Detective Siegel

The Court does not address the claims asserted against Defendant Siegel, because Siegel has not yet answered the amended complaint or moved to dismiss the claims against him.

### J. Loss of Consortium Claim

Plaintiff Rideout's loss of consortium claim is wholly derivative of Plaintiff Newton's constitutional and state law claims.[150]  The Court therefore **GRANTS** the motions to dismiss or for judgment on the pleadings on the loss of consortium claim in so far as it pertains to the other claims dismissed in this order.

### IV. CONCLUSION

For all of those reasons, the Court **GRANTS** the Ellis Defendants' motion for judgment on the pleadings and the Shaker Heights Defendants' motion to dismiss as to Chief DeMuth, Commander Cole, and the City of Shaker Heights.  All of the Plaintiffs' claims against those

---

[150] *Loomis v. Medtronic, Inc.*, No. 1:04-cv-499, 2005 WL 1828763, at *6 (N.D. Ohio Aug. 1, 2005) (citing *Gearing v. Nationwide Ins. Co.*, 665 N.E.2d 1115, 1120 (Ohio 1996)).

Case No. 1:17-cv-2545
Gwin, J.

defendants are therefore **DISMISSED WITH PREJUDICE**.

The Court will also **GRANT** the Shaker Heights Defendants' motion to dismiss the *Brady* claims against Defendant Lamielle, but **DENIES** the motion to dismiss the supervisory liability and civil conspiracy claims against him except to the extent they are premised on the *Brady* claim.

The Court also **GRANTS** Page's motion for judgment on the pleadings as to the *Brady* claim. The other claims against her—namely the malicious prosecution, failure to investigate, IIED, civil conspiracy, and loss of consortium claims to the extent they are distinct from the malicious prosecution or *Brady* claims—remain pending.

The case will proceed as scheduled on the Plaintiffs' claims against Defendant Siegel, the surviving claims against Defendant Page, and the Ellis Defendants' counterclaims.[151]

IT IS SO ORDERED.

Dated: April 27, 2018                           *s/        James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[151] The Court has also reviewed Plaintiffs' request for a status conference. Doc. 73. However, the Court does not see how the 8th District's opinion affirming the dismissal of the criminal charges against Plaintiff Newton could change its ruling on these motions to dismiss or for judgment on the pleadings. Nor does the Court see any need for a status conference at this time. For those reasons, the motion for a status conference is **DENIED**.